UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DAVID FESKE AND TERI FESKE,<br><br>              Plaintiffs,<br>    v.<br><br>MHC THOUSAND TRAILS LIMITED<br>PARTNERSHIP, ET AL.,<br><br>              Defendants. | Case No.: 11-CV-4124-PSG<br><br>**ORDER GRANTING-IN-PART PLAINTIFFS DAVID FESKE AND TERI FESKE'S MOTION TO COMPEL**<br><br>**(Re: Docket No. 43)** |

Plaintiffs David Feske and Teri Feske move to compel Defendants MHC Thousand Trails Limited Partnership, MHC Operating Limited Partnership, Equity Lifestyle Properties, Inc. and Thousand Trails Management Services, Inc. (collectively "Defendants") to disclose the names, membership types and contact information of putative class members. Defendants oppose the motion. On March 13, 2012, the parties appeared for hearing. Having reviewed the papers and considered the arguments of counsel, the court GRANTS-IN-PART Plaintiffs' motion to compel.

**I.   BACKGROUND**

This is a putative class action. Plaintiffs were members in Thousand Trails, a program that provided them with access to a preferred group of campgrounds. In addition to an initial fee, they paid annual dues for several years to satisfy their membership obligations. Defendants operate and manage several campground membership programs, including Thousand Trails. Plaintiffs allege

1

Case No.: C 11-4124 PSG
ORDER

that Defendants' annual disclosures fail to conform with the membership campground laws of California, Arizona, Texas, Florida and Nevada and that false promises were made to them to induce their membership in the campground program. Plaintiffs seek rescission of their membership agreements and a refund of their fees and dues.

On October 13, 2011, Plaintiffs served Defendants with interrogatories seeking the names, membership types and contact information of putative class members during the class period. According to Plaintiffs, beyond a litany of boilerplate objections, Defendants have failed to provide any meaningful responses.[1] Plaintiffs' motion to certify a class is due on August 13, 2012.

## II.  LEGAL STANDARDS

Fed. R. Civ. P. 26(b)(1) allows parties to obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. Once the moving party establishes that the discovery sought is within the scope of permissible discovery, the burden shifts to the party opposing discovery. An opposing party can meet its burden by showing that the discovery is sought to delay the trial, to embarrass or harass, is irrelevant or is privileged.

## III. DISCUSSION

Plaintiffs contend that the requested information is necessary for them to meet the commonality and typicality requirements of Fed. R. Civ. P. 23. Despite Plaintiffs' efforts to meet and confer and their willingness to narrow the requested disclosure to a sample subset of 2,000 members, Defendants continue to object. Plaintiffs contend that in the aftermath of *Dukes v. Wal-Mart,*[2] the discovery sought is especially relevant in that the putative class members are percipient witnesses of, at a minimum, what representations Defendants made and what materials Defendants distributed to induce their membership in campground programs.

Defendants respond with three arguments. First, Plaintiffs improperly seek the names of putative class members and their contact information to identify replacement representatives.

---

[1] *See* Docket No. 41.

[2] --U.S. --, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011).

2
Case No.: C 11-4124 PSG
ORDER

Unlike the putative class members, the Feskes inherited their membership in the campground program and therefore they did not rely on any representations Defendants may have made to them about membership in the program. In addition, the Feskes' complaint arises in part from their inability to use a Las Vegas campground. This particular campground was not even part of their program. Second, the discovery sought would invade the privacy of more than 100,000 of their members without any showing that any of these people possess relevant information about Defendants' representations beyond what Defendants themselves can produce. Third, Plaintiffs' requests impose an undue burden of identifying the type of membership program for each of the 100,000 members, especially when Plaintiffs already received from Defendants a count of their current members served by the five affiliated companies that administer membership programs and an estimate of the number of programs or combinations of programs represented by the current membership.

The court agrees with Plaintiffs, but only in part. Defendants are correct in raising the impropriety of discovery of contact information for the sole purpose of identifying replacement class representatives. *Bradbury*,[3] *Hatch*[4] and the other cases cited by Defendants articulate well why allowing such discovery would constitute an abuse of discretion. But other than Defendants' own <u>speculation</u> about the Feskes' ability to represent the class that it seeks to certify, Defendants offer no <u>evidence</u> that Plaintiffs served this discovery merely as a fishing exercise. More importantly, Plaintiffs have shown that the discovery sought is reasonably calculated to lead to admissible evidence on the central question of whether Defendants' representations about their programs were common across the putative class. It may be true, as Defendants suggest, that their document production will shed light on this question – undoubtedly, it will. But so, too, would

---

[3] *Bradbury v. T-Mobile USA, Inc.,* Case No. C 06-6567 CW, 2009 WL 3388163 (N.D. Cal. Oct. 20, 2009).

[4] *Hatch v. Reliance Insurance Co.,* 758 F.2d 409 (9th Cir. 1985).

Case No.: C 11-4124 PSG
ORDER

3

discovery from the other parties to those same representations – Defendants' customers. This is not a case of identical discovery but rather a case of an identical issue – what did Defendants represent to each of the putative class members – being illuminated by different sources with perhaps very different evidence. Under these circumstances, courts have not hesitated to allow class plaintiffs the opportunity to contact customers in pursuit of the evidence they will be asked to tender in order to certify a class or prevail on the merits.[5] This is even more appropriate in the wake of *Dukes,* after which

> [w]hat matters to class certification . . . is not the raising of common questions – even in droves—but rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.[6]

Though Defendants claim the privacy of putative class members will be invaded by disclosing their names and contact information, that protection is qualified not absolute.[7] The right of privacy must be balanced against the need for discovery.[8] Here, while putative class members have a legally protected interest in the privacy of their contact information, that interest must be considered along with their role as witnesses to the representations at the heart of this case. Between the two extremes of burdening all 100,000-plus members, and none of them, the balance is appropriately struck by allowing Plaintiffs discovery of a statistical significant sample of members. While Plaintiffs have suggested a randomized sample of 2,000 members, the court will leave to the parties to work out the particulars of the selection method (e.g., cluster sampling, stratified sampling, etc.) and sample size necessary to assure a statistically significant representation of the population as a whole. As this court has discussed previously in the specific

---

[5] *See,e.g., Sanbrook v. Office Depot,* No. 07-5938 RMW (PVT), 2009 WL 840019 (N.D. Cal. Mar. 30, 2009).

[6] *See id.*(citing Nagareda, *Class Certification in the Age of Aggregate Proof,* 84 N.Y.U. L.Rev. 97, 131-132 (2009)).

[7] *Khalilpour v. Cellco Partnership,* 2010 WL 1267749 at *3.

[8] *See id.* (citing *Pioneer Electronics v. Sup. Ct.,* 40 Cal. 4th 360, 372, 53 Cal. Rptr. 3d 513, 150 P.3d 198 (2007)).

4

Case No.: C 11-4124 PSG
ORDER

context of class-action discovery,[9] sampling advances the goal of proportionality set forth in Fed. R. Civ. P. 26(b)(3)(c)(iii). The parties shall reach agreement on the selection method and sample size no later than April 13, 2012, and Defendants shall produce the names, addresses, telephone numbers and membership class of each sample member no later than April 27, 2012. Defendants shall be as transparent as possible in their execution of the agreed-upon protocol. In order to appropriately protect the interests of those members selected for the sample, Plaintiffs shall adhere to the following limitations: (1) Plaintiffs' counsel shall inform each putative class member contacted by Plaintiffs that he or she has a right not to talk to counsel and that, if he or she elects not to talk to counsel, Plaintiffs' counsel will terminate the contact and not contact them again; (2) Plaintiffs' counsel shall keep a list of all individuals contacted, and preserve that list so that it may be filed with the court along with Plaintiffs' certification motion; (3) Plaintiffs shall not to use any of the contact information obtained for any purposes outside of this litigation.

**IT IS SO ORDERED.**

Dated:   4/3/2012

PAUL S. GREWAL
United States Magistrate Judge

---

[9] *See Perez v. State Farm Mutual Automobile Ins. Co.,* Case No. 06-1962 JW (PSG), 2011 WL 2433393, *1 (N.D. Cal. Jun. 16, 2011).