1   R. Rex Parris, Esq. (SBN 96567)
        rrparris@rrexparris.com
2   Alexander R. Wheeler, Esq. (SBN 239541)
        awheeler@rrexparris.com
3   Kitty Szeto, Esq. (SBN 258136)
        kszeto@rrexparris.com
4   **R. REX PARRIS LAW FIRM**
    43364 10th Street West
5   Lancaster, California 93534
    Telephone  (661) 949-2595
6   Facsimile   (661) 949-7524

7   Kevin I. Shenkman, Esq. (SBN 223315)
        kshenkman@shenkmanhughes.com
8   **SHENKMAN & HUGHES**
    28905 Wight Road
9   Malibu, California 90265
    Telephone  (310) 457-0970
10

11  Attorneys for Plaintiffs and the Putative Class

12

13              **UNITED STATES DISTRICT COURT**

14  **FOR THE NORTHERN DISTRICT OF CALIFORNIA (SAN JOSE DIVISION)**

15

16  DAVID FESKE and TERI FESKE, individually      )   Case No. 5:11-cv-04124-PSG
    and on behalf of  Class Members,              )
17                                                )   **CLASS ACTION**
                    Plaintiffs,                   )
18                                                )   **PLAINTIFFS' MOTION FOR CLASS**
            v.                                     )   **CERTIFICATION**
19                                                )
    MHC THOUSAND TRAILS LIMITED                   )   Date:         November 6, 2012
20  PARTNERSHIP, MHC OPERATING LIMITED            )   Time:         10:00 a.m.
    PARTNERSHIP, EQUITY LIFESTYLE                 )   Courtroom:  5
21  PROPERTIES, INC., a Maryland corporation;     )
    THOUSAND TRAILS MANAGEMENT                    )   [Honorable Paul S. Grewal]
22  SERVICES, INC.; a Nevada corporation, and     )
    DOES 1 through 100, inclusive,                )
23                                                )
                    Defendants.                   )
24                                                )
                                                  )
25                                                )
                                                  )
26  _____       )

27

28

**TO DEFENDANTS AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on November 6, 2012 at 10:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Paul S. Grewal in Courtroom 5 on the 4th Floor of the San Jose Courthouse of the United States District Court for the Northern District of California located at 280 South 1st Street, San Jose, California 95113, Plaintiffs will and hereby move the Court for an Order certifying the following four classes and three sub-classes:

| | **Class Definition** | **Causes of Action** |
|---|---|---|
| 1 | All California residents who purchased memberships from, or paid membership dues to, Defendants doing business as Thousand Trails between July 21, 2007 and the present.[1] | Violation of California Civil Code Sections 1812.300, *et seq.* |
| 1(a) | All members of class #1 who purchased their memberships by telephone, mail, internet, or otherwise not in-person. | Violation of California Civil Code Sections 1812.300, *et seq.* |
| 1(b) | All members of class #1 who purchased a membership prior to June 2012 and did not inspect at least one of the membership campgrounds prior to purchasing a membership. | Violation of California Civil Code Sections 1812.300, *et seq.* |
| 2 | All persons who purchased a membership including the right or license to use at least one campground located in the State of Texas, from, or paid membership dues associated with such a membership to, Defendants doing business as Thousand Trails between July 21, 2007 and the present. | Violation of Texas Property Code Chapter 222 |

---

[1]      Each of the proposed classes excludes Defendants, Defendants' managers, Defendants' officers, Defendants' directors, Defendants' employees, persons holding ownership interests in Defendants, any successor-in-interest to Defendants, managers of any successor-in-interest to Defendants, officers of any successor-in-interest to Defendants, directors of any successor-in-interest to Defendants, employees of any successor-in-interest to Defendants, persons holding ownership interests in any successor-in-interest to Defendants, and the Judge assigned to this case.

1

| 2(a) | All members of class #2, excluding persons who purchased their membership in the State of Texas. | Violation of Texas Property Code Chapter 222 |
| 3 | All Florida residents who purchased memberships from, or paid membership dues to, Defendants doing business as Thousand Trails between July 21, 2007 and the present | Violation of Florida Code Chapter 509 |
| 4 | All persons who purchased a membership including the right or license to use at least one campground located in the State of Nevada, from, or paid membership dues associated with such a membership to, Defendants doing business as Thousand Trails between July 21, 2007 and the present | Violation of Nevada Administrative Code Chapter 119B |

This Motion is brought pursuant to Federal Rules of Civil Procedure 23(a) and (b) and is based upon this notice; the accompanying Memorandum of Points and Authorities; the Declarations of Alexander R. Wheeler, David Feske, Teri Feske, Albert Cantu, Carl and Melody Higgs, and Anna Neer; the pleadings and papers on file in this matter; the [Proposed] Order lodged together with this Motion; and upon such documentary evidence and oral argument as may be presented at the hearing of this Motion.

Dated:  September 14, 2012                    Respectfully submitted:

                                                **SHENKMAN & HUGHES**
Kevin I. Shenkman
Mary R. Hughes

**R. REX PARRIS LAW FIRM**
R. Rex Parris
Alexander R. Wheeler
Kitty Szeto

By: ___/s/ Alexander R. Wheeler___
            Attorneys for Plaintiffs

2

# TABLE OF CONTENTS

PAGE

INTRODUCTION……………………………………………………………………………..   1

PROPOSED CLASSES……………………………………………………………………….   1

FACTS SUPPORTING CERTIFICATION………………………………………………   2

    DEFENDANTS' CAMPGROUND MEMBERSHIPS……………………………………...   2

    DEFENDANTS DISSEMINATE UNIFORM CAMPGROUND
    MEMBERSHIP AGREEMENTS AND DISCLOSURE FORMS…………………………………   3

    SELECT EXAMPLES OF DEFENDANTS' VIOLATIONS OF THE
    CAMPGROUND MEMBERSHIP LAWS…………………………………………………………   4

    DEFENDANTS CORRECTED THEIR CONTRACTS AND ADVERTISEMENTS IN
    DIRECT RESPONSE TO PLAINTIFFS' FILING OF THIS LAWSUIT………………………   7

LEGAL ARGUMENT……………………………………………………………………….   8

1.    THE PROPOSED CLASSES MEET ALL FOUR RULE 23(A) STANDARDS………………………   8

    A.    The Proposed Classes are Sufficiently Numerous……………………………...   10

    B.    There are Myriad Common Questions of Law and Fact……………………………...   10

        i.    The Proposed California Classes Present Common
            Questions of Law and Fact…………………………………………   12

        ii.    The Proposed Classes Relating to the Membership
            Campground Laws of Texas, Florida and Nevada
            Present Common Questions of Law and Fact…………………………   15

    C.    The Plaintiffs' Claims are Typical…………………………………………...   17

    D.    Plaintiffs and their Counsel Satisfy the Adequacy Standards………………………...   20

2.    CERTIFICATION IS APPROPRIATE UNDER RULE 23(B)(2)…………………………………   21

i

# TABLE OF CONTENTS

PAGE

3.    THE COURT SHOULD ALSO CERTIFY A RULE 23(B)(3) DAMAGES CLASS.........................   22

    A.    The Myriad Common Issues Predominate...............................................   22

    B.    Class-Wide Adjudication is the Superior
        Method of Adjudicating these Claims...............................................   23

    C.    Plaintiffs Propose an Efficient and Manageable
        Class-Wide Determination of both Liability and Damages.........................   24

CONCLUSION.........................................................................................   25

# TABLE OF AUTHORITIES

**PAGE(S)**

## FEDERAL CASES

*Armstrong v. Davis,*
275 F.3d 849 (9th Cir. 2001) .................................................................. 11

*Arnold v. United Artists Theatre Circuit, Inc.,*
158 F.R.D. 439 (N.D.Cal.1994) ............................................................. 10

*Bacon v. Stiefel Labs., Inc.,*
275 F.R.D. 681 (S.D. Fla. 2011) ............................................................ 17

*Ballard v. Equifax Check Services, Inc.,*
186 F.R.D. 589 (E.D. Cal. 1999) ..................................................... 11, 23

*Brown v. SCI Funeral Svcs of Florida, Inc.,*
212 F.R.D. 602 (S.D. Fla. 2003) ........................................................... 11

*Carnegie v. Household Int'l, Inc.,*
376 F.3d 656 (7th Cir. 2004) ................................................................... 9

*Fabricant v. Sears Roebuck,*
202 F.R.D. 310 (S.D. Fla. 2001) ................................................. 11, 21, 22

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir.1998) ..................................................... 11, 17, 20

*Hanon v. Dataproducts Corp.,*
976 F.2d 497 (9th Cir.1992 ................................................................... 17

*Hunt v. Check Recovery Systems, Inc.,*
241 F.R.D. 505 (N.D. Cal. 2007) ................................................ 11, 22, 23

*In re Prudential Ins. Co. Am. Sales Litig. Agent Actions,*
148 F.3d 283 (3d Cir. 1998) ....................................................... 17, 20, 23

*In re Prudential Sec. Inc. Ltd. Partnerships Litig.,*
163 F.R.D. 200 (S.D.N.Y. 1995) ..................................................... 17, 18

iii

1

# TABLE OF AUTHORITIES

2

**PAGE(S)**

**FEDERAL CASES**

*Kamar v. Radio Shack Corp.*,

254 F.R.D. 387 (C.D.Cal.2008) ...................................................................... 11

*Keele v. Wexler*,

149 F.3d 589 (7th Cir. 1998) ........................................................................ 11

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands*,

244 F.3d 1152 (9th Cir. 2001) ................................................................. 22, 23

*Morgan v. Laborers Pension Trust Fund*,

81 F.R.D. 669 (N.D. Cal. 1979) ..................................................................... 21

*Morton v. Valley Farm Transp., Inc.*,

2007 U.S. Dist. LEXIS 31755 (N.D. Cal. April 13, 2007) .................................. 9

*Otsuka v. Polo Ralph Lauren*, Case No. C 07-02780 SI,

2010 WL 366653 (N.D. Cal. Jan. 25, 2010) ..................................................... 9

*Rodriguez v. Hayes*,

591 F.3d 1105 (9th Cir. 2010) ...................................................................... 17

*Slaven v. BP Am., Inc.*,

190 F.R.D. 649 (C.D. Cal. 2000) ..................................................................... 9

*Smilow v. Southwestern Bell Mobile Systems, Inc.*,

323 F.3d 32 (1st Cir. 2003) ........................................................................... 22

*Sollenbarger v. Mountain States Tel. & Tel. Co.*,

121 F.R.D. 417 (D.N.M. 1988) ...................................................................... 22

*United Steel v. ConocoPhillips Co.*,

593 F.3d 802 (9th Cir. 2009) .......................................................................... 8

*Valentino v. Carter-Wallace, Inc.*,

97 F.3d 1227 (9th Cir. 1996) .......................................................................... 8

*Violette v. P.A. Days, Inc.*,

214 F.R.D. 207 (S.D. Ohio 2003) .............................................................. 11, 12

iv

1

## TABLE OF AUTHORITIES

2

PAGE(S)

3

FEDERAL CASES

4

*Wal-Mart Stores, Inc. v. Dukes*,

5

    131 S.Ct. 2541 (2011) ...................................................................................... *passim*

6

*Zinberg v. Washington Bancorp, Inc.*,

7

    138 F.R.D. 397 (D.N.J. 1990)..................................................................................... 17

8

OTHER AUTHORITIES

9

FEDERAL PRACTICE AND PROCEDURE § 1763 (3d ed. 2012) ............................................ 12

10

FEDERAL CIVIL PROCEDURE BEFORE TRIAL, § 10:429.5 (2007) ...................................... 9

11

NEWBERG ON CLASS ACTIONS, § 7.17, at p. 61 (4th Ed. 2003) .................................... 9

12

STATUTES

13

FED. R. CIV. P. 23(a)...................................................................................... 8, 10

14

Fed. R. Civ. P. 23(b) or Fed. R. Civ. P. 23(c)(4) ................................................. 8

15

Fed. R. Civ. P. 23(b)(2) ........................................................................... 8, 21

16

Fed. R. Civ. P. 23(b)(3) .................................................................................. 8

17

18

19

20

21

22

23

24

25

26

27

28

v

1

<u>INTRODUCTION</u>

2        Like other cases involving statutory violations based on a defendant's omission of required

3 statements from standardized uniform contracts, disclosure statements and advertisements, this case is ideal

4 for a classwide resolution.  The proposed representatives each have claims that are identical to a broad swath

5 of Defendants' other members, because they received and were exposed to the same standardized contracts,

6 the same standardized disclosure statements, and the same pervasive advertising as Defendants' other

7 members, grouped below into common-sense classes and subclasses based on which legal theories apply to

8 each broad group of members.  Certification should be granted so that the common statutory issues,

9 applicable to the proposed representatives and absent class members alike, can be decided on the merits.

10

11

<u>PROPOSED CLASSES</u>

12        In order to fairly adjudicate the common claims of Defendants' members, it is appropriate to certify

13 four classes and three sub-classes.  Accordingly, Plaintiffs propose the following:

14

15

| | **Class Definition** | **Causes of Action** |
|---|---|---|
| 1 | All California residents who purchased memberships from, or paid membership dues to, Defendants doing business as Thousand Trails between July 21, 2007 and the present.[1] | Violation of Cal. Civ. Code Sections 1812.300, et seq. |
| 1(a) | All members of class #1 who purchased their memberships by telephone, mail, internet, or otherwise not in-person. | Violation of Cal. Civ. Code Sections 1812.300, et seq. |
| 1(b) | All members of class #1 who purchased a membership prior to June 2012 and did not inspect at least one of the membership campgrounds prior to purchasing a membership. | Violation of Cal. Civ. Code Sections 1812.300, et seq. |

---

[1]       Each of the proposed classes excludes Defendants, Defendants' managers, Defendants' officers, Defendants' directors, Defendants' employees, persons holding ownership interests in Defendants, any successor-in-interest to Defendants, managers of any successor-in-interest to Defendants, officers of any successor-in-interest to Defendants, directors of any successor-in-interest to Defendants, employees of any successor-in-interest to Defendants, persons holding ownership interests in any successor-in-interest to Defendants, and the Judge assigned to this case.

1

| 2 | All persons who purchased a membership including the right or license to use at least one campground located in the State of Texas, from, or paid membership dues associated with such a membership to, Defendants doing business as Thousand Trails between July 21, 2007 and the present. | Violation of Texas Property Code Chapter 222 |
|---|---|---|
| 2(a) | All members of class #2, excluding persons who purchased their membership in the State of Texas. | Violation of Texas Property Code Chapter 222 |
| 3 | All Florida residents who purchased memberships from, or paid membership dues to, Defendants doing business as Thousand Trails between July 21, 2007 and the present | Violation of Florida Code Chapter 509 |
| 4 | All persons who purchased a membership including the right or license to use at least one campground located in the State of Nevada, from, or paid membership dues associated with such a membership to, Defendants doing business as Thousand Trails between July 21, 2007 and the present | Violation of Nevada Administrative Code Chapter 119B |

## FACTS SUPPORTING CERTIFICATION

### DEFENDANTS' CAMPGROUND MEMBERSHIPS

Defendant MHC Thousand Trails, L.P. sells and markets Thousand Trails campground memberships throughout the United States. [30(b)(6) Deposition of Defendants - Walter Jaccard "Jaccard Depo." 96:12 – 97:12.] Defendant MHC Operating L.P. operates the physical logistics associated with running the various campgrounds. [Jaccard Depo. at 120:19 – 121:5.] Defendant Equity Lifestyle Properties, Inc. is a publically traded holding company that ultimately owns the assets of the other defendants, through a complex web of corporate ownership. [*Id*. at 127:18 – 130:7.]

Defendants sell two (2) core base-level campground memberships. [*Id*. at 149:12-21.] Once a customer purchases one of the two (2) base memberships, they have several "upgrade" options that allow them certain enhanced campground access and amenities. [*Id*. at 149:22 – 150:2.] Defendants have

2

previously sold memberships under other names, but the only differences between the different types of

Thousand Trails memberships sold now and in years past are (1) what combination of campgrounds the

customer can use with their membership, (2) the term (length) of the contract, and (3) the different

upgrades/enhancements that a customer may choose to add on to their base membership. [*Id.* at 206:18 –

207:3.] Beyond those narrow and finite differences, all Thousand Trails campground memberships share the

same essential characteristic: they allow the customer to access a grouping of Defendants' membership

campgrounds. [*Id.* at 155:15-19.]


### DEFENDANTS DISSEMINATE UNIFORM CAMPGROUND MEMBERSHIP AGREEMENTS AND DISCLOSURE FORMS

There is a finite amount of information given to Defendants' customers when they (the customers)

purchase a campground membership – they are given (1) a membership contract, (2) a disclosure statement,

(3) member rules, and (4) an ACH form, if the customer processes payment through a credit card. [Jaccard

Depo. at 228:6 – 229:23; Deposition of Seth Rosenberg (Rosenberg Depo.) at 88:21 – 89:21.] There are

only three (3) form membership agreements. [Jaccard Depo. at 256:11 – 257:1.] All of Defendants'

customers, no matter what type of membership they purchase, or what type of upgrades they may later add to

their base membership, receive a disclosure statement upon purchase of their initial membership. [Jaccard

Depo. at 232:5-9; Rosenberg Depo. at 103:10 – 104:4.] Defendants use a total of twelve (12) form

disclosure statements, including one that is the "generic disclosure statement." [Jaccard Depo. at 269:6-13;

300:19 - 303:9] Which disclosure statement is provided to a particular customer is determined solely based

on the state in which the customer executes the membership agreement. If a customer buys a membership at

a campground, the customer gets the disclosure statement corresponding to the state in which the

campground is located; if the customer buys a membership online or over the telephone, they get the

disclosure statement of their state of residence. [*Id.* at 251:7 – 254:20.] The only other document that

contains any sort of disclosures is the membership contract. [*Id.* at 249:19 – 250:18.]

Defendants' disclosure statements do not vary at all depending on the type of membership the

customer buys, or the "upgrades" they may later purchase. [*Id.* at 250:19 – 251:6; 268:11-14; 296:8-14.] All

of Defendants' disclosure statements share the same basic information, and although the language may vary

somewhat by state depending on the state in which it is executed, they are completely uniform within each state.  [*Id*. at 231:8-17.]  Even though the disclosure statements have some state-specific information, they are all, in the words of Defendants, "more similar than they are different."  [*Id*. at 310:5-21.]

Just like their content, Defendants' dissemination of their disclosure statements is done in a uniform, systematic fashion – they (the customers) receive the disclosures by mail, are given them in person (at the campground), or they can choose to read them on the Internet.  [Jaccard Depo. at 284:20 – 287:10.]

The two remaining documents distributed to customers – the privacy policy and ACH authorization form – are likewise the same for all of Defendants' customers.  [*Id*. at 258:5-20]  Any other information provided to customers is similarly completely standardized and common to all customers, as Defendants provide their sales representatives with a verbatim script to use in selling memberships. [Wheeler Decl. Ex. A].

### SELECT EXAMPLES OF DEFENDANTS' VIOLATIONS OF THE CAMPGROUND MEMBERSHIP LAWS

Though Defendants' violations of the campground membership laws are merits issues not usually considered at the certification stage, here it is critical to understand some exemplary violations in order to assess the commonality and typicality of Plaintiffs' claims.

Defendants' disclosures violate myriad provisions of the state Campground Membership laws pled in Plaintiffs' complaint.  For example, California's Membership Campground Law requires that a campground operator update its members annually with regard to the disclosures required by California Civil Code Section 1812.302:

> A membership camping operator shall provide to a purchaser the following written disclosures in any format which clearly communicates the following reasonably current information before the purchaser signs a membership camping contract, or gives any money or thing of value for the purchase of a membership camping contract. The written disclosures shall be included in or attached to the contract before the time the contract is signed. ***The following information shall be updated once a year***.

(Emphasis added.)  It is undisputed that Defendants have not, and do not, provide updates to members residing in California, or elsewhere, when material information about their memberships change, annually, or at any time for that matter.  Indeed, Defendants have conceded this crucial fact in deposition.  [Jaccard Depo. at 282:19 – 284:11; Rosenberg Depo. at 152:6-19.]  Albert Cantu, as well as David and Teri Feske, were each Thousand Trails campground members residing in California during the class period, and each

4

purchased their respective campground memberships in California, paying annual dues to Defendants when they received their annual invoices at their California residences.  [Declaration of David and Teri Feske, ¶ 4; Declaration of Albert Cantu, ¶¶ 3-5.]  Just like all other California members, Mr. Cantu and Mr. and Mrs. Feske were never updated on key changes to the information specified in California's Membership Campground Law, such as the availability of significant facilities to non-members.  [Feske Decl. ¶¶ 4, 6; Cantu Decl. ¶ 10.]

Section 1812.302 of California's Membership Campground Law also requires a membership campground operator to disclose, among other things:

> [A] brief description of any significant facilities that are or will be available to non-purchasers or non-members.  'Significant facilities' shall include, but are not limited to, each of the following: the number of campsites in each campground…"

Defendants' disclosure statements given to California residents, like Mr. Cantu, however, do not indicate which, if any, of the significant facilities are available for use by non-members on a pay-per-use basis. While Defendants will point to a chart that lists "Facilities and Amenities" and its rightmost column is labeled "Public Camping" with "X"s for each campground, that does not reasonably communicate what facilities at each campground are available for use by non-members.  (*See, e.g.* Wheeler Decl. Ex B). More importantly, non-member use is not a "facility" or "amenity," as "public camping" is indicated to be on the chart – on the contrary, it is a burden to members – which further makes the chart confusing and misleading while failing to disclose the required information.

Defendants' failure to update the disclosures applicable to their members residing in California is particularly troubling here because of the significant changes Defendants made with respect to the exclusivity of their campgrounds.  Specifically, prior to 2009, most of Defendants' campgrounds were not available to non-members on a pay-per-use basis.  Then, Defendants changed this policy, making all of their campgrounds available for such non-member use, and failed to inform any of their existing California members of that material change.  [Rosenberg Depo. at 152:6-19; Jaccard Depo. at 282:19 – 284:11, 335:11 – 341:4, Exs. 51, 52]  Believing that the campgrounds to which they held a membership were still available only to members, most of these members continued to pay annual membership dues ranging from about $400 to $700 each year.  Had they known that they could instead pay only a small fee when they wished to

5

1   use the campgrounds, many (likely most, including David and Teri Feske) would not have paid these annual

2   dues.  (Feske Decl. ¶ 7.)

3       By way of another example, Florida Code Section 509.507(1)(m) similarly makes it unlawful for

4   Defendants to "[i]mply that a facility is available for the exclusive use of purchasers if the facility will

5   actually be shared by others or by the general public."  But that is precisely what Defendants have done

6   through their website www.thousandtrails.com -- "we are a members-only campground."  (Wheeler Decl.

7   Ex. C).  While Defendants, in response to this lawsuit and in acknowledgement that their advertising was

8   deceptive, removed this statement from their website, other statements implying that their campgrounds are

9   for the exclusive use of members remain on their website and other promotional materials.  (Wheeler Decl.

10  Ex. D).  It is precisely because of these sorts of unlawful statements that Carl and Melody Higgs, residents of

11  Florida, for example, were enticed into purchasing a membership in Defendants' campgrounds, only to later

12  be denied access to those same campgrounds because campsite spaces were provided to the general public

13  without even giving members any priority.  (Declaration of Carl and Melody Higgs, ¶¶ 8-9.)

14      By way of yet another example, The Texas Membership Campground Law is explicit in its

15  application to all campground memberships that include one or more "membership camping resorts located

16  in [Texas]"  Texas Property Code § 222.002.  Yet, particularly in connection with the sale of memberships to

17  non-residents of Texas, where the memberships include Texas campgrounds, Defendants' membership

18  agreements lack the statements required by Section 222.007 of the Texas Property Code: "the purchaser's

19  right to cancel the membership camping contract as provided by Section 222.008(c)"; "whether the

20  purchaser visited the location of the membership camping resort before signing the contract"; and "that if the

21  purchaser timely exercises any right of cancellation under the contract, all payments made by the purchaser

22  to the seller in connection with the contract shall be returned to the purchaser before the 21st day after the

23  seller receives notice of cancellation as required under Section 222.008."

24      Given the uniformity of the contracts and disclosure statements (as required by various laws), and the

25  uniformity of Defendants' dissemination of the disclosure statements and contracts, Plaintiffs' pled statutory

26  violations are ideal for adjudication on a class-wide basis, as the question of whether the disclosures and

27  contracts comport with the state laws can be decided as to one class member and that finding can be

28  extrapolated across the entire class, without the adjudication of any class-member specific affirmative

6

1  defenses.  Indeed, the findings as to each pled statutory violation "will resolve an issue that is central to the

2  validity of each one of the claims in one stroke."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551

3  (2011).

4    **DEFENDANTS CORRECTED THEIR CONTRACTS AND ADVERTISEMENTS IN DIRECT RESPONSE TO**
   **PLAINTIFFS' FILING OF THIS LAWSUIT**

5

6         Since the filing of this lawsuit, the changes Defendants have made to their advertisements and form

7  contracts demonstrate some of the very violations of the membership campground laws and deceptive

8  advertising that are the subject of this case.  For example, when this case was filed, Defendants' form

9  contract used in the sale of campground memberships to California residents did not include the verbatim

10  cancellation-rights language required by Section 1812.304 of the California Civil Code, enacted decades ago,

11  in direct violation of that statute.  [*See* Wheeler Decl. ¶ 5, Ex. E]  But in June 2012, no doubt in response to

12  the claim in this case that their form contracts violate this very section, Defendants finally corrected their

13  contract, adding the language required by section 1812.304.  [*Id*. ¶ 6, Ex. F.]

14         Similarly, in response to the allegations in this case – that Defendants' website advertisements were

15  false and misleading in their implication that Defendants' campgrounds are exclusive or members-only

16  [Complaint ¶ 21] – Defendants began quietly removing these false and misleading statements from their

17  website.  For example, in June 2011, just prior to the filing of this lawsuit, Defendants' website advertised

18  "we are a member-only campground."  [Wheeler Decl., Ex. C]  Defendants have since removed this

19  statement from their website [*Id*., Ex. D], but that website is still replete with other false and deceptive

20  statements.[2]

21         Changing their business practices in response to allegations of violating consumer protection laws,

22  including California's Membership Campground Law, is nothing new for Defendants.  In *some* of their

23

24  _____

25  [2] Defendants have argued that this statement is actually true, without providing any explanation for their
   decision to change the statement, and criticized Plaintiffs for not quoting the entire sentence.  The rest of

26  the sentence – "While we are a members-only campground, we always welcome members to bring their
   friends and of course new visitors are welcome as well" – does little to make this statement any less

27  false, deceptive or misleading.  Rather, as Defendants' corporate representatives have testified, their
   campgrounds are generally available for use by non-members – not just  members' guests and first-time

28  visitors considering the purchase of a campground membership. [Rosenberg Depo. at 152:6-19; Jaccard
   Depo. at 282:19 – 284:11, 335:11 – 341:4, Exs. 51, 52]

disclosure statements and public filings, Defendants provide a laundry list of twenty-nine (29) adverse judgments, settlements and consent decrees that they are subject to – most as a result of cases brought by attorneys general and district attorneys to protect consumers from Defendants' dishonest and unlawful business practices.  [Jaccard Depo. Ex. 53].  Indeed, the California Attorney General called Defendants on their violation of California's Membership Campground Law in 1996, and Defendants were required to change their business practices and pay money in restitution for their misdeeds.  [*Id*. at 344:11 – 347:13, 349:1-23]

## LEGAL ARGUMENT

### 1.   THE PROPOSED CLASSES MEET ALL FOUR RULE 23(A) STANDARDS

To be certified, a class must satisfy the requirements of Fed. R. Civ. P. 23(a), as well as at least one of the requirements of Fed. R. Civ. P. 23(b) or Fed. R. Civ. P. 23(c)(4)[3].  Here, Plaintiffs seek to certify some classes seeking primarily injunctive and declaratory relief pursuant to Fed. R. Civ. P. 23(b)(2), and other classes of only California residents seeking monetary relief, in addition to injunctive and declaratory relief, pursuant to Fed. R. Civ. P. 23(b)(3).

Rule 23(a) requires that the proposed class (1) be so numerous that joinder of all members is impracticable; (2) entail questions of law or fact common to the class; (3) be represented by a typical named plaintiff; and (4) be represented by a named plaintiff and counsel who are adequate.  *See* FED. R. CIV. P. 23(a).  These criteria are commonly referred to as (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy.

For the proposed Rule 23(b)(2) classes, the Court must also consider whether Defendants have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Only slightly different is the Court's inquiry for the proposed Rule 23(b)(3) classes: (1) whether questions of law or fact common to the class predominate over questions affecting only individual members (predominance) and (2) whether a class action is superior to other available methods for the fair and efficient adjudication of the controversy

---

[3] *See Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) (holding that in appropriate cases Rule 23(c)(4) authorizes district courts "to isolate the common issues . . . and proceed with class treatment" of those issues "[e]ven if the common questions do not predominate over the individual questions so that class certification of the entire action is warranted.")

1    (superiority).

2          The district court must determine whether the plaintiff's *theory of liability* is amenable to class

3    treatment.  *See United Steel v. ConocoPhillips Co.*, 593 F.3d 802, 807-08 (9th Cir. 2009) (reversing denial of

4    class certification).  Doubts as to certifying a class or subclass are to be resolved in favor of certification.

5    *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 651 (C.D. Cal. 2000).[4]  This is particularly appropriate where, as

6    here, each individual class member's claim is for a relatively modest sum.  *See Carnegie v. Household Int'l,*

7    *Inc.*, 376 F.3d 656, 661 (7th Cir. 2004).  Finally, individual damage determinations cannot be a bar to class

8    certification.  *Morton v. Valley Farm Transp., Inc.*, 2007 U.S. Dist. LEXIS 31755, *16 (N.D. Cal. April 13,

9    2007) (certification granted despite need for individualized damage inquiries).[5]

10          Defendants are likely to argue that *Wal-Mart v. Dukes*, 131 S.Ct. 2541 (2011) ("*Dukes*") somehow

11   demands a denial of certification in this case. The Supreme Court in *Dukes*, however, recognized in the first

12   sentence of its opinion that the facts of that case were extraordinary and unique: "[w]e are presented with one

13   of the most expansive class actions ever." *Id.* at 2547.  *Dukes* was a proposed class action brought by three

14   (3) named plaintiffs on behalf of ***over one-million*** putative class members that worked in over ***3,000*** Wal-

15   Mart stores all across the county based on employment decisions made at the individual store level.  In

16   *Dukes*, the plaintiffs alleged gender discrimination inflicted by thousands of individual store managers, each

17   of whom had nearly unfettered, store-level discretion to make promotion decisions.

18          With that extraordinary record before it, not surprisingly, the Supreme Court found that the three (3)

19   named plaintiffs failed to identify the common-issues "glue" that held together the ***over one-million*** putative

20   class members' Title VII claims.  Given the incredibly massive size of the nationwide class spanning over

21   3,000 stores, and the broad discretion at issue in the Title VII claims, the Court found that individual issues

22

23   ─────────────────

24   [4]      *See also Otsuka v. Polo Ralph Lauren*, Case No. C 07-02780 SI, 2010 WL 366653, *4 (N.D.
     Cal. Jan. 25, 2010) (granting motion for class certification); *see also* 2 Alba Conte, et al., Newberg on
25   Class Actions, § 7.17, at p. 61 (4th Ed. 2003).

26   [5]      *See also* Newberg on Class Actions § 4:26 at p. 220 (4th Ed. 2003)("In most cases, the
27   amount of damages suffered is an individual matter, but the Advisory Committee Notes state that such
     needed individual proof of damages will not preclude a finding of predominance."); 2 William W.
28   Schwarzer, et al., Federal Civil Procedure Before Trial, § 10:429.5 (2007)("The fact that
     damages vary from class member to class member does not itself defeat class certification").

                                                        9

1    about "***literally millions of employment decisions***" prevented a finding of commonality.  *Id.* at 2552

2    (emphasis added).

3        *Dukes* could not be more distinguishable from this narrow class action brought to recover under a

4    strict liability statutory scheme, based on omissions common to Defendants' uniform contracts and

5    disclosure statements.  These common documents – the only documents distributed by Defendants to the

6    class members, and particularly the omission of certain key information from those documents – provide the

7    cohesive "glue" that allows for a finding of commonality, and which Justice Scalia found lacking in the

8    million-person proposed class in *Dukes*, because liability depended on examining the thousands of store

9    managers' subjective intent.  *Id.* at 2552.

10       **A.      The Proposed Classes are Sufficiently Numerous**

11       Numerosity does not require that joinder of all members be impossible, but only that joinder be

12   impracticable.  *Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 448 (N.D.Cal.1994); Fᴇᴅ. R.

13   Cɪᴠ. P. 23(a)(1).  Plaintiffs do not need to state the exact number of potential class members, and numerosity

14   does not require any predetermined, specific number of class members.  *Arnold*, 158 F.R.D. at 448.  In any

15   event, numerosity is easily satisfied here.

16       Though Defendants have provided little discovery regarding the number and identity of their

17   members and the types of memberships purchased, even when faced with a Court order to do so, the limited

18   information that Defendants have provided indicates that each of the proposed classes more than satisfies the

19   requirement of numerosity.  According to Defendants, as of November 30, 2011, there were 105,652 current

20   members of Defendants' campgrounds.  (Wheeler Decl. Ex. G).  For the proposed classes that are limited to

21   California residents, Defendants have acknowledged that the number of California members is also

22   sufficiently numerous.  (Wheeler Decl. Ex. H).  Based on either California or Florida's percentage of the

23   national population, or the percentage of Defendants' campgrounds that are located in California or Florida,

24   it is reasonable to surmise that the number of California members exceeds at least 12,769, and the number of

25   Florida members exceeds at least 3,913 -- easily satisfying the numerosity requirement.  Even when the

26   California class is narrowed further to create sub-classes based on the manner in which a member purchased

27   his/her membership (e.g. by mail, telephone, website, or in-person), those subclasses too are more than

28

10

1    sufficiently numerous.  [Rosenberg Depo. 86:9-17].  Indeed, counsel have discussed the numerosity

2    requirement and do not expect numerosity to even be challenged by Defendants.

3         **B.    There are Myriad Common Questions of Law and Fact**

4         Rule 23(a)(2) requires that "there are questions of law or fact common to the class."  It is sufficient

5    for class members to have shared legal issues but divergent facts or, similarly, to share a common core of

6    facts but base their claims for relief on different legal theories.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011,

7    1019 (9th Cir. 1998).  Indeed, the Ninth Circuit considers the requirements for finding commonality under

8    Rule 23(a)(2) to be "minimal."  *Id.* at 1020.  And, the Ninth Circuit has held that commonality exists "where

9    the lawsuit challenges a system-wide practice or policy that affects all of the putative class members."

10   *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001).  As with common factual questions, shared disputes

11   on questions of law "militate[] in favor of class certification, since it must be resolved for the class as a

12   whole."  *Kamar v. Radio Shack Corp.*, 254 F.R.D. 387, 405 (C.D.Cal.2008).  Post-*Dukes*, the commonality

13   standard is clear – class-wide litigation must generate "common answers" that can be adjudicated across the

14   entire class. *Dukes*, 131 S.Ct. at 2551.  "That common contention, moreover, must be of such a nature that it

15   is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an

16   issue that is central to the validity of each one of the claims in one stroke."  *Id.*

17        Where, as here, the plaintiffs' theory of liability is that the information and content in documents

18   and/or disclosure statements are inadequate under a statutory scheme, finding commonality and granting

19   certification is routine.  *See, e.g., Brown v. SCI Funeral Svcs of Florida, Inc.*, 212 F.R.D. 602, 604 (S.D. Fla.

20   2003) (granting certification on statutory violation claims because plaintiff alleged defendant "failed to make

21   the required statutory disclosures as provided in FRISA and TILA."); *Fabricant v. Sears Roebuck*, 202

22   F.R.D. 310, 313 (S.D. Fla. 2001); *Violette v. P.A. Days, Inc.*, 214 F.R.D. 207, 213-214  (S.D. Ohio 2003)

23   (holding commonality requirement satisfied where the overarching question was whether defendants'

24   disclosures met the statutory requirements); *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) (affirming

25   certification of a FDCPA class action involving form collection letters); *Ballard v. Equifax Check Services,*

26

27

28

*Inc.*, 186 F.R.D. 589, 594-95 (E.D. Cal. 1999);[6] *Hunt v. Check Recovery Systems, Inc.*, 241 F.R.D. 505, 510 (N.D. Cal. 2007) (granting certification in FDCPA case).

In *Fabricant*, the plaintiffs alleged that the defendant insurance company sold insurance products that failed to make sufficient disclosures under the federal Truth in Lending Act and analogue Florida state laws. 202 F.R.D. at 312. The plaintiffs moved for certification of both an injunctive relief "(b)(2)" class – seeking an injunction requiring defendants to make appropriate disclosures in the future – and a "(b)(3)" damages class, for recovery of statutory damages. *Id.* at 317. The district court found commonality satisfied because defendants disseminated "standardized forms, procedures and disclosures" to the entire class and therefore defendants' liability under the statutory disclosure requirements could be determined by comparing the law to the allegedly deficient documents. *Id.* at 313. Similarly, in *Violette*, the district court granted certification of the plaintiffs' claim that defendants' disclosures statements violated the Truth in Lending Act statutory disclosure requirements. The district court found that common questions of fact arose as to whether defendants failed to disclose a product it sold along with cars, and common questions of law arose as to whether that failure to disclose violated the TILA disclosure requirements. 214 F.R.D. at 213-214.

Wright & Miller is in accord with this vast body of law in statutory violation cases:

> "When the complaint alleges that there has been an ***inadequate disclosure of some required information*** or some other defect in the procedures or forms utilized, common questions of law and fact are found in the standardized conduct of the defendant in allegedly failing to meet those statutory requirements."

7A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Richard L. Marcus, FEDERAL PRACTICE AND PROCEDURE § 1763 (3d ed. 2012) (emphasis added).

    i.  The Proposed California Classes Present Common Questions of Law and Fact.

The first proposed California class [Class Definition No. 1] presents question of fact and law that through common proof will generate common answers. California's Membership Campground Law requires that a campground operator update its members annually with regard to the disclosures required by California Civil Code Section 1812.302 – "The following information shall be updated once a year."

---

[6] Granting certification in a FDCPA class action because "all proposed class members were sent standardized collection letters by ECS demanding payment of a $20 service charge and representing that the charge was authorized under California law. Thus, their claims all involve the common question of whether ECS's standardized practice violated the FDCPA and/or the CUBPA."

12

1   Defendants concede that they have not, and do not, update any of their members residing in California, or

2   elsewhere, despite the statutory language requiring such updates.  [Jaccard 282:19 – 284:11]  While that

3   binding admission is an issue that will be adjudicated on the merits, from a class certification perspective,

4   Defendants' uniform practice of not updating their California members either violates this California law

5   requiring annual disclosures, or it doesn't.  The trial will thus be exceedingly simple: Plaintiffs will present

6   argument about the disclosure requirements of this California law and evidence from Defendants' corporate

7   representative about the fact that they do not update their members annually, or at all.  The finder of law

8   and/or fact will then make a merits determination as to whether the disclosures were required.  If the finding

9   is that the California statute requires annual disclosures, liability will have been proven class-wide given

10  Defendants' admission that they do not update their members at all.  If the Court, on the other hand, adopts

11  Defendants' contrived statutory interpretation, still that legal theory common to all members of Class 1 will

12  have been resolved.

13          Either way, Proposed Class No. 1 will generate a single *Dukes* "common answer" on the merits that

14  can be determined as to one class member without considering any unique facts about any other member's

15  disclosure, and that unitary finding can be extrapolated across the entire class.  There are no class-member-

16  specific "affirmative defenses" on Plaintiffs' annual disclosures claim that must be adjudicated on an

17  individual level such that commonality is destroyed.  There is certainly nothing approaching the kind of

18  store-level managerial decision making in connection with promotion decisions that was present in *Dukes*.

19  Indeed, it is hard to imagine a case more amenable to class certification than this one involving statutory

20  interpretation that will be extrapolated across admittedly uniform disclosures and Defendants' admitted

21  failure to update its California members annually.

22          Other violations of California's membership campground law by Defendants are similarly amenable to

23  adjudication across the entire proposed California class [Class No. 1].  For example, Section 1812.302

24  requires a membership campground operator to disclose, among other things:

25          a brief description of any significant facilities that are or will be available to
        nonpurchasers or nonmembers.  'Significant facilities' shall include, but are not limited
26      to, each of the following: the number of campsites in each campground …

27  None of Defendants' disclosure statements disseminated to California residents indicate which, if any, of

28  the significant facilities are available for use by non-members on a pay-per-use basis.  While Defendants

13

point to a chart that lists "Facilities and Amenities" and its rightmost column is labeled "Public Camping" with "X"s for each campground, that does not reasonably communicate which of the facilities at each campground is available for use by non-members.  Specifically, non-member use is not a "facility" or "amenity," as "public camping" is indicated to be on the chart – on the contrary, it is a burden to members. Furthermore, Defendants testified that only 3-5% of the campsites at each campground are available for non-member use.  [Jaccard Depo 339:11 – 340:8].  While Plaintiffs doubt the veracity of this testimony in light of what members have reported, the disclosure statements certainly do not communicate "the *number of campsites* in each campground" that are "available to nonpurchasers or nonmembers."[7]

        As Defendants acknowledge, their disclosure statements are uniform and standardized.  [Jaccard Depo. 231:8-17, 250:19 – 251:6, 268:11-14, 269:6-13, 296:8-14, 300:19 – 303:9, 310:5-21].  So too then is the answer to the dispositive question of each California class member's claim – whether those disclosure statements comply with California's Membership Campground Law.

        For other violations of California's membership campground law by Defendants, the use of subclasses is appropriate because some, but not all, California members were affected.  For example Section 1812.303 of California's Membership Campground Law requires that "… The membership camping operator shall inform the purchaser orally of the right to cancel at the time the contract is executed."  But in connection with membership transactions that are completed by mail, telephone, internet, or otherwise not in-person, Defendants do not inform purchasers orally of their rights to cancel at the time the contract is executed.  [Rosenberg Depo 94:18 - 96:13].  Rather, the membership agreement is executed at a time when no sales representative is even in communication with the purchaser. [*Id.*].  Accordingly, for this violation Plaintiffs propose a subclass of California residents who purchased their memberships by telephone, mail, Internet, or otherwise not in-person [Sub-Class 1(a)], for which this violation too is class-wide.

        Subclass 1(b) is also an example of where an identifiable group of California members has been affected by one of Defendants' many violations of California's membership campground law. Section 1812.304 of California's Membership Campground Law requires that:

---

[7] The discussion of particular violations of state membership campground laws in this Memorandum is exemplary, and not intended to be exhaustive.  Indeed, Plaintiffs provided this Court with a chart detailing additional exemplary violations (Docket # 85-1)

> If the purchaser has not inspected at least one of the membership camping operator's campgrounds prior to purchase of a membership camping contract, the notice shall contain the following additional language:  'If you sign this contract without having first inspected one of the membership camping operator's campgrounds, you may also cancel this contract at any time prior to midnight of the 10th business day after date of purchase by mailing or delivering the signed and dated attached written notice of cancellation or a copy of the contract when that contains the cancellation instructions together with the original camping club contract, membership card and any other evidence of membership.'

Up until June 2012, when Defendants changed their standard California membership contract (no doubt in response to this lawsuit), Defendants' uniform California membership agreement did not include this required language, even though many of their members purchase a campground membership without having first inspected a campground.  [Rosenberg Depo. 88:13-19, 173:15 – 174:21].  This is especially true of the nearly half of Defendants' members who purchase their membership by telephone or internet. [*Id.*].  Because this violation of California's membership campground law affects only those members who purchased their membership without first inspecting one of the campgrounds that limitation is included in the definition of subclass 1(b).

     ii.  <u>The Proposed Classes Relating to the Membership Campground Laws of Texas, Florida and Nevada Present Common Questions of Law and Fact.</u>

Defendants' violations of the membership campground laws of Texas, Florida and Nevada are similarly appropriate for class-wide adjudication, as the relevant features of Defendants' disclosures, contracts and advertisements are uniform among broad classes of their members.

For example, the Texas Membership Campground Law is explicit in its application to all campground memberships that include one or more "membership camping resorts located in [Texas]." Texas Property Code § 222.002. Section 222.006 requires certain information to be included in any promotional materials for any campground membership subject to the Texas membership campground law, such as:

> a statement to the effect that the promotion is intended to solicit purchasers of membership interests or membership rights in a membership camping resort" and "the full name of the operator and seller of the membership interest or membership right in the membership camping resort.

But Defendants' promotional materials – for campground memberships including at least one campground within Texas – do not include the required information.  For example, the promotional materials available on

Defendants' website, www.thousandtrails.com, which is, of course, available in Texas and everywhere else, do not include this required information. (Wheeler Decl. Ex. I). To adjudicate this claim, the Court need only look to Defendant's advertisements to see that they run afoul of Texas' membership campground law – there are absolutely no individual issues – making this claim ideal for classwide determination across all members of Class #2 – persons who purchased a membership including the right or license to use at least one campground located in the State of Texas.

Likewise, although Texas' membership campground law is applicable to any membership that includes one or more "membership camping resorts located in [Texas]," Defendants include the items required by that law in the contracts and disclosure statements of only Texas residents. Texas Property Code § 222.002. Accordingly, for this violation Plaintiffs propose a subclass excluding Texas residents [Sub-Class 2(a)], for which this violation too is classwide.

Defendants' violations of Florida's membership campground law too are ideal for classwide resolution – at least among Florida purchasers like Carl and Melody Higgs. Florida Code Section 509.507(1)(m) makes it unlawful for Defendants to "[i]mply that a facility is available for the exclusive use of purchasers if the facility will actually be shared by others or by the general public." But that is precisely what Defendants have done, as discussed above, and continue to do through their website www.thousandtrails.com -- "we are a members-only campground." (Wheeler Decl. Ex. C). Like any claim based on a defendant's advertisements, the common, indeed predominant, issue is whether the content of the advertisements violate the law – in this case whether they "[i]mply that a … facility will [not] be shared … by the general public." This issue requires an evaluation of the advertisements – nothing relating to the individual members.

Similarly, Defendants' violation of Florida Code Section 509.505 – for failing to include the required disclosures in their membership camping contracts – is common across all members of Class #3. As Defendants have testified, the contracts they use in a particular state are all the same. [Jaccard Depo 254:2-11, 315:22 – 321:23]. Accordingly, the fact that Defendants' Florida contracts do not contain the disclosures required by Section 509.505 can be adjudicated as to all Florida purchasers by looking to any one member's standardized contract.

1    Finally, Defendants' violation of Nevada Administrative Code Section 119B.330 similarly requires only

2    an evaluation of Defendants' advertisements – nothing related to individual members.  Section 119B.330

3    requires any advertisement of a membership campground "which refers to a community or a geographical

4    area in connection with a campground must state the mileage from a specific point in that community or area

5    and describe the types of roads to be traversed."  Yet, Defendants' advertisements for their Las Vegas

6    campground, for example, refers to communities or geographical areas such as "The Strip," "Redrock

7    Canyon" and "Lake Mead", but do not "describe the types of roads to be traversed" between the

8    campgrounds and those referenced points of interest.  (Wheeler Decl. Ex. J).  Each person who maintains a

9    membership that includes the right or license to use at least one campground located in the State of Nevada is

10   affected by Defendants' failure to include this required information in their advertisements, and so that is

11   exactly how Class #4 is defined.

## C.     The Plaintiffs' Claims are Typical

13        The Rule 23(a)(3) typicality requirement is "permissive" and requires only that the representative's

14   claims are *reasonably related* to those of the absent class members – the claims need only be "similar," "they

15   need not be substantially identical."  *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (emphasis

16   added).  "Typicality refers to the nature of the claim or defense of the class representative, ***and not to the***

17   ***specific facts from which it arose or the relief sought***."  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508

18   (9th Cir.1992 (internal citations omitted; emphasis added).  Thus, "representative claims are 'typical' if they

19   are reasonably co-extensive with those of absent class members; they need not be substantially identical."

20   *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir.1998) (emphasis added). "Where, as here, both the

21   named representatives and the putative class members were alleged victims of uniform misrepresentations

22   and omissions by Defendants, typicality cannot be a hurdle to certification."  *Bacon v. Stiefel Labs., Inc.*, 275

23   F.R.D. 681, 692 (S.D. Fla. 2011).

24        The typicality requirement is "liberally construed."  *In re Prudential Sec. Inc. Ltd. Partnerships*

25   *Litig.*, 163 F.R.D. 200, 208 (S.D.N.Y. 1995).  In deciding whether a plaintiff has met the typicality

26   requirement, "[t]he focus is on defendant's behavior, not that of plaintiff, and on whether the class can point

27   to the same general, overall course of [] conduct."  *Zinberg v. Washington Bancorp, Inc.*, 138 F.R.D. 397,

28   407 (D.N.J. 1990).  "The possibility of factual distinctions between the claims of the named plaintiffs and

17

1    those of other class members does not destroy typicality, as ***similarity of legal theory may control even in***

2    ***the face of differences of fact***." *In re Prudential Sec. . Inc. Ltd. Partnerships Litig*., 163 F.R.D at 208

3    (emphasis added).  *See also In re Prudential Ins. Co. Am. Sales Litig. Agent Actions*, 148 F.3d 283, 311 (3d

4    Cir. 1998) ("***[E]ven relatively pronounced factual differences will generally not preclude a finding of***

5    ***typicality where there is a strong similarity of legal theories or where the claim arises from the same***

6    ***practice or course of conduct***.") (emphasis added).

7           Even wide disparity between the factual underpinnings of the named plaintiffs' claims and those of

8    the absent class members does not destroy typicality, where the named representative and the rest of the class

9    share the same legal theories.   In *In re Prudential Sec. Inc. Ltd. Partnerships Litig*., the district court found

10   the typicality requirement satisfied in a proposed class involving 700 different investment limited

11   partnerships even though the named plaintiffs had not purchased each of the 700 different investment limited

12   partnerships that they challenged.  The district court noted that there was no requirement "that named

13   plaintiffs invest in all related partnerships that are the subject of the action."  *In re Prudential Sec. Inc. Ltd.*

14   *Partnerships Litig*., 163 F.R.D at 208.

15          The six proposed class representatives in this case together form a representative cross-section of

16   Defendants' members, who combine to have the very same claims as are asserted by the proposed classes.

17   Albert Cantu, Carl and Melody Higgs, David and Teri Feske, and Anna Neer are all current or former

18   members of Defendants' network of campgrounds who have paid annual dues to Defendants since July 21,

19   2007.[8]

20          Mr. Cantu, David Feske and Teri Feske are all residents of California, so California's membership

21   campground law applies to their memberships with Defendants.  Like all other California members, they

22   were not updated annually, or at all, concerning the availability of certain "significant facilities" to non-

23   members on a pay-per-use basis, or any of the other information required by California Civil Code Section

24   1812.302.  (Cantu Decl. ¶ 10; Feske Decl. ¶ 8.)  Similarly, like all other California members, neither Mr.

---

[8] While Mr. Cantu, Mr. and Mrs. Higgs and Ms. Neer are not yet parties to this case – Plaintiffs' motion for leave to amend their complaint is still pending – the Court can simply add them to the case and designate them class representatives as part of its order certifying the classes.  Manual for Complex Litigation (Fourth) § 21.26. ("[C]ourts generally allow class counsel time to make reasonable efforts to recruit and identify a new representative who meets the Rule 23(a) requirements. The Court may permit intervention by a new representative ***or may simply designate that person as a class representative in the order granting class certification***.") (emphasis added).

18

Cantu nor the Feskes were ever informed of "the number of campsites, in each campground" "that are or will be available to nonpurchasers or nonmembers" as required by Section 1812.302 – the Feskes because they received no disclosure statement at all, and Mr. Cantu because Defendants' uniform disclosure statement simply omitted this important information. (Cantu Decl. ¶ 8; Feske Decl. ¶ 4). Therefore, the claims of Mr. Cantu and Mr. and Mrs. Feske are typical of those of Class #1.

Additionally, the Feskes' claims are typical of Subclasses 1(a) and 1(b). The Feskes purchased their membership by executing an agreement they received from Defendants by mail and returning that agreement along with a check. (Feske Decl. ¶ 4). Like all members of Subclass 1(a), the Feskes were, therefore, not "inform[ed] … orally of the right to cancel at the time the contract [was] executed," as required by California Civil Code Section 1812.303. Also, like all members of Subclass 1(b), the Feskes did not inspect one of Defendants' campgrounds before purchasing their membership. (*Id.*) Accordingly, the Feskes' contract should have included the "additional language" required by California Civil Code Section 1812.304:

> "If you sign this contract without having first inspected one of the membership camping operator's campgrounds, you may also cancel this contract at any time prior to midnight of the 10th business day after date of purchase by mailing or delivering the signed and dated attached written notice of cancellation or a copy of the contract when that contains the cancellation instructions together with the original camping club contract, membership card and any other evidence of membership."

But the Feskes' contract contained no such language, nor did the contract of any California member, even if they had not inspected a campground, until Defendants changed their standard California contract in June 2012. (Wheeler Decl. Ex. E-F).

The claims of Albert Cantu, Carl Higgs and Melody Higgs are typical of Class 2 and Subclass 2(a). As Defendants concede, the memberships of Mr. Cantu and Mr. and Mrs. Higgs include the right to use all of Defendants' nationwide campgrounds. (Cantu Decl. ¶ 4; Higgs Decl. ¶ 3.) So, like all other members of Class #2, their memberships include at least one of Defendants' campgrounds located in the State of Texas. Accordingly, by its own terms, the Texas Membership Campground Law is applicable to their memberships, and so they are entitled to complain that Defendants' advertisements do not comply with that law. Also, like all members of Subclass 2(a), the contracts provided to Mr. and Mrs. Higgs and Mr. Cantu did not include the statements required by Section 222.007 of the Texas Property Code, because Defendants do not include those required statements in their contracts except when a membership is purchased in Texas, despite the explicit text of the Texas Membership Campground Law stating that law applies to all campground

19

1   memberships that include one or more "membership camping resorts located in [Texas]"  Texas Property
2   Code § 222.002.

3          Because all Florida purchasers receive the same uniform standardized membership camping contract,
4   the claims of Carl and Melody Higgs – both longtime residents of Florida – could not be more typical of
5   Class 3.  (Higgs Decl. ¶¶ 2-3.)  Like all members of Class 3, Mr. and Mrs. Higgs executed Defendants'
6   standard Florida contract that, despite the clear guidance of Florida Code Section 509.505, does not contain
7   many of the required disclosures.  Furthermore, Mr. and Mrs. Higgs are exposed to Defendants'
8   advertisements, including their website, just like other members of Class 3.  It is those advertisements – not
9   directed at any one particular individual – that impermissibly "[i]mply that [Defendants'] facilit[ies are]
10  available for the exclusive use of purchasers" when in truth "the facility[ies] will actually be shared by others
11  or by the general public," and thus violate Florida Code Section 509.507(1)(m).  Nor do Defendants'
12  advertisements disseminated in Florida – again, not directed to any one particular individual - comply with
13  Florida Code Section 509.507(2) which requires specific text to be conspicuously included in all written
14  advertising.

15         Finally, the claims of Albert Cantu, Carl and Melody Higgs, and Anna Neer, are all typical of
16  Class 4.  Like all other members of Class 4, the memberships of Mr. Cantu, Mr. and Mrs. Higgs and Ms.
17  Neer all include the right to use the Las Vegas campground operated by Defendants.  (Cantu Decl ¶ 4 ; Higgs
18  Decl ¶ 3; Neer Decl ¶ 3.)  As explained above, the advertising for that campground violates Nevada
19  Administrative Code Section 119B.330.  The claims of Mr. Cantu, Mr. and Mrs. Higgs and Ms. Neer are, in
20  this respect, identical to those of the absent members of Class 4.

21         For each cause of action for which class certification is sought here, the proposed class
22  representatives have exactly the same legal theories as the absent class members, and their claims arise from
23  exactly the same practice and course of conduct of Defendants.  This identity of legal theory, claims, and
24  even relevant facts, is even more than is required under the liberal standard for typicality under Rule
25  23(a)(3). *See In re Prudential Ins. Co. Am. Sales Litig. Agent Actions*, 148 F.3d 283, 311 (3d Cir. 1998).

26         **D.     Plaintiffs and their Counsel Satisfy the Adequacy Standards**
27         Adequacy of proposed class representatives and class counsel is determined by answering two
28  questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class

20

members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020. Quite simply, there are no conflicts between the absent class members, on the one hand, and the proposed class representatives and class counsel on the other hand. As discussed above, the proposed representatives and class counsel seek to assert the same claims and legal theories available to all members of the proposed classes and subclasses. The vigorous prosecution of this action by the R. Rex Parris and Shenkman & Hughes firms up to this point, demonstrates that class counsel will continue to prosecute this action vigorously on behalf of the class, just as they have done in other class action cases. Moreover, the credentials of those firms are beyond any reasonable challenge – the R. Rex Parris firm has been lead class counsel on countless class actions resulting in recoveries of tens and hundreds of millions of dollars, (Wheeler Decl., ¶¶ 15-16, Ex. M) and the Shenkman & Hughes firm was lead class counsel on the only other membership campground class action in California – *Drew v. Lake Elizabeth Golf & RV Ranch LLC*, Los Angeles Superior Court Case No. BC436730 – at the end of which, each current member of that campground received nearly $1000.

Defendants' argument in their "Motion to Deny Class Certification" regarding adequacy is disingenuous at best. The adequacy requirement of Rule 23(a)(4) is to protect absent class members, not defendants. *See Hanlon*, 150 F.3d at 1020. Even Defendants cannot seriously contend that the absent class members would be better off if this case is not pursued on their behalf, and instead Defendants are free to continue their deceptive and unlawful practices. Rather, Defendants' argument regarding adequacy boils down to their unsupported assertion that whenever some statement, inconsequential to the claims for which certification is sought, is debunked through deposition testimony, counsel are inadequate. For all of the reasons discussed in Plaintiffs' opposition to Defendants' Motion to Deny Class Certification, that is not nearly enough to justify finding class counsel inadequate, and Defendants' argument simply does not hold water.

**2.   CERTIFICATION IS APPROPRIATE UNDER RULE 23(B)(2).**

Certification under Rule 23(b)(2) is appropriate when the defendant "has acted or refused to act on grounds generally applicable to the class," thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole. FED. R. CIV. P. 23(b)(2). "Requesting a declaration that Defendants presently are violating the law and an injunction forcing defendant to comply

21

with the law *is precisely the type of class appropriate for class certification under Rule 23(b)(2)*.

*Fabricant*, 202 F.R.D. at 316 (emphasis added), citing *Morgan v. Laborers Pension Trust Fund*, 81 F.R.D. 669, 681 (N.D. Cal. 1979). Plaintiffs seek exactly that form of classic Rule 23(b)(2) relief – a declaration of Defendants' past violation of the campground memberships laws, and an injunction forcing Defendants to comply with those laws in the future.

Plaintiffs' statutory violation causes of action are all ideal for certification as a Rule 23(b)(2) class because, like in *Fabricant* and *Morgan*, Plaintiffs seek a determination that Defendants are violating each Campground Membership law corresponding to each Proposed Class and Sub-Class.  And, if the Court finds liability on some or all of those claims, Plaintiffs also seek an injunction forcing Defendants to comply with the laws.  For example, if the finder or fact and/or law rules that Defendants are required to update the California Class Members annually on the items listed in Section 1812.302, particularly when there are material changes to those items, then Plaintiffs will seek an injunction requiring Defendants to do exactly that.

**3.  THE COURT SHOULD ALSO CERTIFY A RULE 23(B)(3) DAMAGES CLASS.**

A district court may certify both a Rule 23(b)(2) injunctive relief class and a Rule 23(b)(3) damages class.  *Fabricant*, 202 F.R.D. at 315-316; *Hunt*, 241 F.R.D. at 512-513.   In addition to the four Rule 23(a) requirements, at least one of the three circumstances enumerated in Rule 23(b) must be satisfied.  Here, the applicable Rule 23(b)(3) inquiry is (1) whether questions of law or fact common to the class predominate over questions affecting only individual members (predominance) and (2) whether a class action is superior to other available methods for the fair and efficient adjudication of the controversy (superiority).

**A.    The Myriad Common Issues Predominate.**

The predominance requirement is satisfied "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication."  *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands*, 244 F.3d 1152, 1161 n.23 (9th Cir. 2001) (reversing a denial of class certification where district court should have found predominance requirement met).  The concept of "predominance" does not require that *all* issues are common to the class.  *Smilow v. Southwestern Bell Mobile Systems, Inc.*, 323 F.3d 32, 39-40 (1st Cir. 2003).  Rather, the "predominance inquiry is essentially a 'pragmatic' decision by the district judge to determine if "one or more of the central

1    issues in the action are common to the class." *Sollenbarger v. Mountain States Tel. & Tel. Co.*, 121 F.R.D.

2    417, 433 (D.N.M. 1988).

3         The common questions outlined extensively above as to each Proposed Class predominate over any

4    conceivable "individual issues" that Defendants might concoct.  Indeed, especially in the context of a lawsuit

5    seeking damages for statutory violations for alleged failure to disclose, or inadequate disclosure, common

6    issues predominate.  This is because, like here, when "Plaintiff alleges that Defendant provided the same

7    disclosures to all class members and that those disclosures violate" the statute at issue, "common issues

8    predominate." *Fabricant,* 202 F.R.D. at 317.  As the district court found in *Fabricant*, a statutory disclosure

9    case like this one (albeit under TILA), "[t]he core legal and factual issues relating to liability and statutory

10   damages here are not merely common, but identical." *Id*.

11        The inherent predominance of common issues in statutory violation cases involving uniform

12   disclosures (or a uniform failure to disclose) is articulated in *Ballard*, where the district court granted

13   certification in a FDCPA case based upon standardized letters and representations sent to the class members

14   assessing a fee. 186 F.R.D. at 597.  Defendant argued that the assessed fee was "authorized by law" with

15   respect to *some* of the class members, and thus individual issues would prevent class certification.  The

16   district court nonetheless found that common issues still predominated over individual ones because the

17   defendant had treated each class member the same when it had mailed each one a standardized collection

18   letter "demanding payment of a $20 service charge. . . ." *Id*. at 598. The district court noted that defendant

19   could not argue successfully that individual issues predominate when defendant's own course of conduct

20   toward the class members itself brushed off any differences between the proposed class members.  *Id*.  In the

21   end, the district court's holding was that the contents of the letter either violated the statute, or it did not –

22   either way, those common issues of fact and law predominate and make a class-wide adjudication on the

23   common liability question efficient and easily manageable.  Similarly, in *Hunt*, the district court granted

24   certification in a statutory disclosure class action because the "primary and predominating question in this

25   case is whether Defendant's conduct in demanding statutory charges, in addition to the debt amount and

26   interest, was contrary to California law and therefore in violation of the FDCPA."  241 F.R.D. at 514.

27        Each of the common issues discussed at length above are themselves the "primary and

28   predominating" questions that will drive the adjudication of the *Dukes* "common answers" – whether

1   Defendants' uniform contracts, disclosure statements, and advertisements violate the campground

2   membership statutes upon which each proposed class and subclass bases its claims.  Any alleged "individual

3   issues" would be "ministerial," and involve the determination and calculation of damages, which does not

4   affect the predominance requirement.  *Hunt*, 241 F.R.D. at 514.

5         **B**.      **Class-Wide Adjudication is the Superior Method of Adjudicating these Claims**

6         "The superiority requirement asks the court 'to balance, in terms of fairness and efficiency, the merits

7   of a class action against those of 'alternative available methods' of adjudication.'"  *In re Prudential Ins. Co.*

8   *Am. Sales Practice Litig.*, 148 F.3d 283, 316 (3rd Cir. 1998).  "Class actions ... may permit the plaintiffs to

9   pool claims which would be uneconomical to litigate individually."  *Local Joint Exec. Bd. of*

10  *Culinary/Bartender Trust Fund v. Las Vegas Sands*, 244 F.3d 1152, 1163 (9th Cir. 2001).  The class action

11  device is superior to individual lawsuits where "even under the most optimistic scenario," the class members

12  would receive minimal sums of money.  *Id.* (reversing a denial of certification and finding the class action

13  mechanism superior where each class member stood to gain, at most, $1,330).

14        Like in the *Las Vegas Sands* case, the putative class members in this case stand to recover relatively

15  modest sums of money that would deter them (and potential counsel) from pursing their claims on an

16  individual basis.  Thus the class action device is a superior method of adjudication.   "Duplicative litigation"

17  is also not a bar to superiority, as Plaintiffs are unaware of any litigation already commenced against these

18  Defendants seeking to enforce the membership campground laws at issue here, let alone other proposed class

19  litigation.

20        **C**.      **Plaintiffs Propose an Efficient and Manageable Class-Wide Determination of both**

21                       **Liability and Damages**

22        If the Court finds that all, or some, of the proposed classes and sub-classes are amenable to

23  certification, Plaintiffs will promptly move for at least partial summary judgment on their statutory claims.

24  For example, the necessary facts to find that Defendants have violated California's membership campground

25  law will likely be undisputed – Defendants have admitted that they do not update the members of Class #1

26  annually, or ever, regarding changes in their membership features, despite statutory language requiring them

27  to do so.  Given those undisputed facts, Defendants' liability on that theory can be decided by disposing of

28  Defendants' creatively convenient interpretation of Section 1812.302 of the California Membership

1   Campground Law – a question of law for the Court to decide.  The Court's determination on that key issue
2   can then be extrapolated across the entire class, particularly since none of the class members have received
3   the annual disclosures required by Section 1812.302.

4        The other claims on which Plaintiffs seek class certification, are similarly for statutory violations.
5   For many of those claims, just as with the claim for violation of California's membership campground law
6   discussed above, the facts are undisputed, and liability boils down to a question of statutory interpretation –
7   in most instances a single issue of statutory interpretation.  For example, it is difficult to imagine that
8   Defendants will argue that their uniform contracts with residents of states other than Texas comply with the
9   Texas membership campground law.  Rather, Defendants have indicated that they will argue that the Texas
10  law does not apply to any membership sold outside of Texas.  Resolution of that single statutory
11  interpretation issue is likely to resolve Defendants' liability as to a claim of subclass 2(a).  That liability
12  finding, as to the claims of class 1 and subclass 2(a), discussed above, and the other proposed "(b)(2)"
13  classes, may then provide the basis for injunctive relief – i.e. the Court ordering Defendants to abide by these
14  campground membership laws on a going-forward basis.

15       Plaintiffs may also seek a jury determination of any disputed issues of fact on the claims asserted by
16  the proposed Rule 23(b)(3) class and subclasses.  But that may be unnecessary, as the Court's rulings on
17  statutory interpretation are likely to guide the parties, and assuming that Plaintiffs' construction of the
18  statutes is adopted, the relevant facts necessary for a finding that Defendants are liable, are truly undisputed.

19  <u>C</u>ONCLUSION

20       For the foregoing reasons, the Court should grant Plaintiffs' motion for class certification.

22  Date:  September 14, 2012        **R. REX PARRIS LAW FIRM**

24       By:    */s/ Alexander R. Wheeler*
25            Alexander R. Wheeler
26            Attorneys for Plaintiffs