**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| DAVID FESKE AND TERI FESKE, individually and on behalf of class members, | ) ) ) | Case No.: 11-4124 PSG |
| Plaintiffs, | ) ) | **ORDER RE CLASS CERTIFICATION AND AMENDING THE COMPLAINT** |
| v. | ) ) | **(Re: Docket Nos. 52, 54, 55, 56, 64, 75, 77, 88)** |
| MHC THOUSAND TRAILS LIMITED PARTNERSHIP, et al, | ) ) ) | |
| Defendants. | ) ) | |

Before the court are several motions brought by both Defendants MHC Thousand Trails Limited Partnership, et al (collectively "Defendants") and Plaintiffs David Feske and Teri Feske (collectively "the Feskes"), most importantly of which are a motion to deny class certification,[1] a motion for leave to amend the complaint (ostensibly to avoid a denial of class certification),[2] and a motion to certify a class based on the proposed, but not yet approved, amended complaint.[3]  The court is also presented with several discovery motions, specifically, a motion for a protective

---

[1] *See* Docket No. 75.

[2] *See* Docket No. 77.

[3] *See* Docket No. 88.

Case No.: 11-4124 PSG
ORDER

order,[4] a motion for clarification of an earlier discovery order,[5] a motion to resolve sample size issues,[6] and a motion to compel.[7]

Having carefully considered the parties' papers and arguments, the court DENIES the Feskes' request for leave to amend the complaint, DENIES class certification, DENIES AS MOOT the discovery motions in so far as they involve class discovery, and DENIES WITHOUT PREJUDICE the motion to compel as it relates to discovery other than for class certification.

## I.     BACKGROUND

Defendants are a group of interrelated corporations and partnerships that together operate over eighty campgrounds throughout the United States.[8]  At these campgrounds, Defendants provide access to facilities, such as recreational vehicle hook-ups, that presumably make camping an easier and more enjoyable vacation prospect.  Defendants sell various memberships to their campgrounds that allow campers the right to "unlimited" nights at the various sites, within certain specific limits.

These campground memberships are at the heart of this case. Two types of membership are particularly relevant to the motions at issue, the "Zone Park Pass" and "legacy memberships." According to Defendants, members who purchase a Zone Park Pass may stay at any of Defendants' campsites within a certain zone of the country.  The Zone Park Pass was first introduced in 2010 and is an annual membership.  Defendants describe the legacy memberships, on the other hand, as holdover contracts from before the various campground organizations were consolidated under one

---

[4] *See* Docket No. 52.

[5] *See* Docket No. 54.

[6] *See* Docket Nos. 55, 56.

[7] *See* Docket No. 64.

[8] *See* Docket No. 1 Ex. B at ¶¶ 2-6, ¶ 10.

Case No.: 11-4124 PSG
ORDER

United States District Court
For the Northern District of California

corporate umbrella.  Defendants apparently continue to honor the prior contracts according to the separate terms developed by each campground operator prior to the consolidation.

According to their complaint, "[i]n or about 2002, the Feskes purchased a membership in the Thousand Trails network of campgrounds" and "agreed to pay annual dues in the amount of $499.00 per year for a minimum of three years."[9]  They also allege that based on representations by Defendants that the campgrounds were "limited to members and their guests," the Feskes "believ[ed] that in order to use the facilities and amenities at the Defendants' campgrounds, they would have to purchase a membership from Defendants."[10]  And so, the complaint concludes, "[b]ased on Defendants' representations and promises that their membership would entitle them to utilize the facilities and amenities at Defendants' network of campgrounds, and that use of the campgrounds would be limited to members and their guests, the Feskes purchased a membership in Defendants' campgrounds."[11]

The Feskes assert that Defendants engage in deceptive and misleading representations when selling their memberships, including misrepresentations about the exclusivity of the campgrounds.[12]  The Feskes also claim that the disclosures Defendants provide to members and potential members fail to comply with several states' laws regulating the information campground organizations furnish to their members.[13]

Before filing this suit, the Feskes sent a letter to Defendants that purportedly provided notice of deficiencies in Defendants' disclosures and contained complaints regarding the presence of non-members in campgrounds that the Feskes stated they assumed were exclusively for

---

[9] Docket No. 1 Ex. B at ¶ 9.

[10] *Id.* at ¶ 14.

[11] *Id.* at ¶ 15.

[12] *See id.* at ¶¶ 57-86.

[13] *See id.* at ¶¶ 32-56.

3

Case No.: 11-4124 PSG
ORDER

members.[14]  The Feskes also complained that when they expressed dissatisfaction with their membership and a desire to cancel their membership, Defendants threatened to sue them unless they paid more than $100.[15]  The Feskes further opined that Defendants never informed them about what campsites they were entitled to visit, which they say was especially problematic after Defendants refused to allow them to camp in Las Vegas as the Feskes requested.[16]

Despite their representations in the letter and the complaint, at the Feskes' respective depositions in this case, they revealed that they had not seen non-members when they used Defendants' campgrounds.[17]  The Feskes also explained that they actually had inherited the membership from David Feske's mother after she passed away, and the membership was one of the "legacy memberships" that Defendants continued to honor but not necessarily sell.[18]  Terry Feske also admitted that any understanding regarding a money-back guarantee stemmed from a "general understanding" of Defendants' website, which Defendants assert was not in existence when the Feskes first obtained the membership.[19]

After the Feskes' depositions, Defendants filed a motion to deny certification of a class primarily on the grounds that the Feskes and their counsel were not adequate representatives of the class and were not typical of most of the class members in light of the misrepresentations in the complaint and the letter.[20]  The Feskes oppose the motion but also move for leave to amend their

---

[14] *See* Docket No. 83 Ex. B.

[15] *See id.*

[16] *See id.*

[17] *See* Docket No. 75 Ex. I at

[18] *See id.* at

[19] *See id.* at

[20] *See* Docket No. 75.

Case No.: 11-4124 PSG
ORDER

complaint to add other potential class representatives.[21]  Defendants oppose the motion for leave to amend on various grounds, including that the Feskes failed to act diligently to secure alternative representatives and had improperly used a prior order from the court regarding discovery to find the new representatives.[22]

The Feskes also move to certify four classes and three sub-classes of Defendants' members.[23]  The Feskes categorize the classes primarily by potential violations of state laws governing member campground organizations, and they seek certification based on the proposed amended complaint rather than the original one.[24]

The court thus faces a bit of a procedural quagmire.  It must address a denial of certification motion on a complaint that may or may not be the complaint on which the case will proceed; it must also deal with whether an amended complaint should be permitted; and it must deal with a motion for class certification brought pursuant to that amended complaint but opposed as if the original complaint were still in place.

## II.    DISCUSSION

To extricate itself from all this, the court finds a determination of the operative complaint the most reasonable first step.  If leave to amend is appropriate, then the court must consider any certification motions in light of the amended complaint.[25]  If, on the other hand, leave to amend is not appropriate, the original complaint remains operative and remains the complaint on which class certification should be determined.  And so, even though Defendants' motion to deny class

---

[21] *See* Docket Nos. 77, 82.

[22] *See* Docket No. 83.

[23] *See* Docket No. 88.

[24] *See id.*

[25] *See Valadez-Lopez v. Chertoff*, 656 F.3d 851, 857 (9th Cir. 2011) (noting that "it is well-established that an amended complaint supersedes the original, the latter being treated thereafter as non-existent").

5

Case No.: 11-4124 PSG
ORDER

1    certification pre-dates the Feskes' motion for leave to amend, the court considers the Feskes'

2    motion first. Once that issue is resolved, the court may address the motions regarding certification

3    and finally turn to the motions regarding discovery.

4    **A.        Leave to Amend**

5            Because the deadline for leave to amend their complaint under the scheduling order passed

6    well before they filed their motion,[26] the Feskes must show not only that leave to amend is

7    appropriate under Fed. R. Civ. P. 15(a) but also must show that they have good cause to amend the

8    case scheduling order pursuant to Fed. R. Civ. P. 16(b). Although Rule 15(a) generally is

9    interpreted permissively, the Feskes do not enjoy such a liberal interpretation under Rule 16(b).[27]

10

11           Before the court discusses Rule 16(b), it must address the Feskes' suggestion, first raised in

12   their reply brief, that the addition of class representatives is exempt from Rule 16(b).[28] The Feskes

13   point to *Gilliam v. Addicts Rehabilitation Center Fund*,[29] a case in the Southern District of New

14   York, in which the district court permitted the plaintiffs to amend their complaint under Rule 15(a)

15   to add new plaintiffs, supposedly even after the scheduling order deadline.[30] *Gilliam* makes no

16   mention of the deadlines for leave to amend or Rule 16(b), which, according to the Feskes, means

17   that Rule 16(b) does not apply to this kind of request. The Feskes fail to mention that *Gilliam*

18   involved a collective action brought pursuant to the Fair Labor Standards Act rather than a class

19   action brought pursuant to Rule 23 or that the defendants there did not oppose the addition of new

20   plaintiffs.[31] And so, even if the court were persuaded that *Gilliam*'s absence of discussion of Rule

21

22

23   ───────────────

24   [26] *See* Docket No. 41.

25   [27] *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).

26   [28] *See* Docket No. 85.

27   [29] Case No. 05 Civ. 3452 RJHRLE, 2006 WL 1049352 (S.D.N.Y. Apr. 19, 2006).

28   [30] *See id.* at *2.

Case No.: 11-4124 PSG
ORDER

*United States District Court*
*For the Northern District of California*

16(b) stood for the premise that class actions are exempt from it, which the court is not, *Gilliam* does not involve the same type of case or an opposed motion to amend and so is easily distinguishable.

The Feskes also suggest that Fed. R. Civ. P. 21 likewise excuses any barrier to amendment of class action pleadings to add class representatives. Rule 21 provides that "[m]isjoinder is not ground for dismissing an action" and so "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." Rule 21 is a method for the court to effect joinder, not a basis for allowing plaintiffs to amend their complaint.[32] The Feskes have not moved to join the new representatives, and the court declines to interpret their motion for leave to amend as a motion for joinder.[33] Rule 21 therefore is inapplicable to their motion.

The court therefore returns to Rule 16(b), which applies with equal force to putative class actions as it does to other cases.[34] When a scheduling order has been issued with deadlines for amending the pleadings and that deadline has passed, a plaintiff first must comply with Fed. R. Civ. P. 16(b)(4) to modify the scheduling order to allow for late amendments.[35] Fed. R. Civ. P. 16(b)(4) requires a "good cause" showing. The focus of the good cause inquiry in the Rule 16(b) context is the "diligence of the party seeking the modification," in particular whether the party was "diligent in assisting the [c]ourt to create a workable schedule at the outset of litigation," whether

---

[31] *See id.*

[32] *See Pan Am. World Airways, Inc. v. U.S. Dist. Court for Central Dist. of California*, 523 F.2d 1073, 1079-80 (9th Cir. 1975) (noting that Rule 21 relies on the standards set forth in Fed. R. Civ. P. 19 and 20, which govern intervention as of right and permissive intervention, respectively).

[33] Even if the Feskes had moved to join the other representatives, they still would be subject to Rule 16(b) because the scheduling order also set a deadline for joinder of parties that likewise has passed. *See* Docket No. 41.

[34] *See, e.g., Plascencia v. Lending 1st Mortg.*, Case No. C 07-4485 CW, 2012 WL 253319, at *4 (N.D. Cal. Jan. 26, 2012).

[35] *See Johnson*, 975 F.2d at 609.

7

Case No.: 11-4124 PSG
ORDER

"the scheduling order imposes deadlines that have become unworkable notwithstanding its diligent efforts to comply" and whether the party was "diligent in seeking the amendment once it became apparent that extensions were necessary."[36]

The Feskes assert that they acted diligently in pursuing leave to amend despite the four-month interval between the deadline for amendments and their motion.[37]  They apparently were waiting for Defendants to produce samples of class members to aid in uncovering other potential class representatives.  According to the Feskes, when Defendants stalled on those productions, the Feskes needed time to investigate and muster their own additional representatives.  They state that "[b]elieving that they would receive class member contact information through discovery – particularly after this Court ordered exactly that – Plaintiffs did not undertake efforts to independently locate other class members until the latter part of June 2012."[38]  They thus argue that Defendants' discovery delays excuse their own four-month delay in seeking amendment to add the new representatives.

But the Feskes were not entitled to discovery from Defendants to find replacement class representatives – the court stated as much in its order compelling Defendants to provide a sampling of contact information from the class members.[39]  As it noted in that order and as it repeats here for the Feskes' benefit, seeking to add or replace class members is not grounds for discovery of class member identities.[40]  The Feskes appeared to understand that limitation because in their motion to

---

[36] *Adobe Systems Inc. v. Coffee Cup Partners, Inc.*, No. C 11-2243 CW, 2012 WL 3877783, at *6 (N.D. Cal. Sept. 6, 2012) (citing *Johnson*, 975 F.2d at 609).

[37] *See* Docket No. 77.

[38] *Id.* at 1.

[39] *See* Docket No. 51.

[40] *See Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 416 (9th Cir. 1985) (finding no abuse of discretion for denial of discovery of class members "to solicit support for [counsel's] efforts to certify the class"); *Bradbury v. Hatch*, Case No. C 06-6567 CW, 2009 WL 3388163 (N.D. Cal. Oct. 20, 2009)

8

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

compel, they explicitly stated that the reason class member identities were relevant was so they could "ascertain whether common questions of law and fact exist, and evaluate the typicality of Plaintiffs' claims compared with those of the absent class members."[41]  The reason the court permitted the Feskes a limited sampling of contact information from potential class members was to allow them to determine whether they met the typicality and commonality requirements for class certification, not to permit them to find better class representatives.[42]  The Feskes knew when the court issued its order back on April 3, 2012 that their discovery should not have been for the purposes of replacing or supplementing class members.

And so, to the extent that the Feskes' attribute the delay in their request for amendment to Defendants' failure to produce class member identities, the excuse has no merit.  Defendants' deficient production may be problematic but since the Feskes should not have used that discovery to uncover class members anyway, they are in no worse place than if Defendants had made the production.  The Feskes had to find any additional class members on their own regardless of what Defendants did and so the delay in amending the pleadings to add those individuals lies squarely on the Feskes.

The Feskes also point to other discovery misconduct by Defendants to suggest that because they could not depose Defendants' Fed. R. Civ. P. 30(b)(6) representatives and because they did not have access to certain documents they could not uncover Defendants' potential defenses.[43]  But Defendants' potential defenses have nothing to do with the addition of class member representatives, unless the Feskes are willing to admit that this case has little to do with them as

---

(denying discovery of potential class member identities when plaintiff's sole reason for the discovery was "to find a putative class member who will replace him").

[41] Docket No. 43 at 5.

[42] *See* Docket No. 51.

[43] *See* Docket No. 77.

Case No.: 11-4124 PSG
ORDER

United States District Court
For the Northern District of California

plaintiffs.[44]  Either the Feskes have a case or they do not; uncovering Defendants' defenses to their cause of action just so they could be sure to add representatives who did not run afoul of Defendants' responses is not a justification for delaying the inclusion of new representatives.

Although diligence is the talisman of Rule 16(b), the Feskes also have not shown what circumstances made it "apparent that extensions were necessary" or made the case schedule "unworkable notwithstanding [their] diligent efforts to comply."  The Feskes gloss over the reason for both their amendment and Defendants' motion for denial of certification, specifically that the Feskes as inheritors of their memberships may be inadequate representatives or lack standing for their claims.  The Feskes suggest both in this motion and in their opposition to the motion for denial of class certification that amendment of the complaint to add these new representatives will cure any deficiency that Defendants identify.[45]

To the extent that the Feskes rely on the motion for denial of class certification or Defendants' arguments regarding their standing as excuses for their overdue amendment, that argument too is unavailing.[46]  Defendants alluded to the Feskes' problematic position with regards to their claims in the opposition to the motion to compel filed back in February 2012.[47]  Although in its order the court found that Defendants' arguments presented only speculation and not evidence regarding the Feskes' motives for seeking class member identities, the Feskes' subsequent depositions in June 2012 verified that the facts could not be squared with a number of their representations in their complaint.  The Feskes, unlike the court, had knowledge all along of

---

[44] *Cf. Culver v. City of Milwaukee*, 277 F.3d 908, 913 (7th Cir. 2002) (noting that "the courts and Congress have balked" at removing "the requirement that a class action, like any other suit, have a plaintiff," even if "[r]ealistically, functionally, practically, [the lawyer] is the class representative").

[45] *See id.*; Docket No. 82.

[46] *Cf. Osakan v. Apple Am. Group*, Case No. C 08-4722 SBA, 2010 WL 1838701, at *3 (N.D. Cal. May 5, 2010) (denying leave to amend under Rule 16(b) in part because plaintiff knew of defendants' standing argument nearly a year before and failed to find an adequate substitute).

[47] *See* Docket No.

10

Case No.: 11-4124 PSG
ORDER

what their statements in the depositions revealed – for example, that they inherited their membership and that they had not seen non-members on campsites where they were camping – and so they cannot argue that Defendants' discovery of that information is a circumstance requiring amendment of the scheduling order.

The court is not persuaded that the cases the Feskes point to in support of their motion require a different result.  In *Amparan v. Plaza Home Mortgage, Inc.*,[48] for example, the district court addressed the propriety of granting leave to amend only under the more permissible Rule 15(a) standard.[49]  In *McConnell v. Red Robin International, Inc.*,[50] the district court likewise considered the motion for leave to amend under Rule 15(a) because the court already had invited the plaintiffs to amend the complaint.[51]  In *Gould v. Motel 6, Inc.*,[52] the district court approved leave to amend under Rule 16(b), but after a recitation of each side's numerous arguments the court stated only that it was "persuaded that plaintiffs have been diligent in attempting to find additional potential class representatives."[53]  From that statement alone, the court cannot determine how the district court assessed the arguments before it.

Having rejected Defendants' discovery performance as justification for the Feskes' delay and having found that any of the problems with their pleadings were of their own making, the court finds that the Feskes were not diligent in seeking amendment of their complaint.  They requested amendment more than four months after the deadline had passed and one year to the day after they

---

[48] Case No. 07-4498 JF (RS), 2009 WL 2776486 (N.D. Cal. Aug. 28, 2009).

[49] *See id.* at *1.

[50] Case No. C 11-03026 WHA, 2012 WL 1357616 (N.D. Cal. Apr. 17, 2012).

[51] *See id.* at *2-3.

[52] Case No. CV 09-8157 CAS (FMOx), 2011 WL 759472 (C.D. Cal. Feb. 22, 2011).

[53] *Id.* at *5.

11

Case No.: 11-4124 PSG
ORDER

initiated this case,[54] despite the fact that throughout that period they possessed knowledge of the facts that undermine their complaint.  If they wanted to add additional class representatives, they had almost six months before the court issued the scheduling order and another sixty days from that date to find those new class representatives.  The Feskes instead waited for Defendants to provide them with class member identities, even though their entitlement to that information was not for the purposes of finding new members.  And only when Defendants failed to produce the documents – in light of a dispute between the parties on the appropriate production scope[55] – did the Feskes actually look for other representatives.  From these set of facts, the court cannot conclude that they acted with the requisite diligence to amend the scheduling order.

Because the court finds that the Feskes did not act diligently to satisfy the good cause requirement of Rule 16(b), their request for leave to amend their complaint is DENIED.

**B.    Class Certification**

As the court explained above, Defendants moved for denial of class certification a day before the Feskes sought leave to amend their complaint.[56]  Because the scheduling order set August 13, 2012 as the deadline for seeking class certification, the Feskes brought the requisite motion before the court had determined either the denial of class certification motion or the motion for leave to amend.  Even though the court had not granted leave to amend, the Feskes proceeded on their request for certification as if the proposed complaint had been approved.  However reasonable this approach, the denial of the Feskes' request for leave to amend their complaint leaves the original pleadings as the operative complaint upon which the court must deal with the class certification motions.

---

[54] *See* Docket No. 1 Ex. B.

[55] *See* Docket Nos. 52, 54, 55, 56

[56] *See* Docket Nos. 75, 77.

12

Case No.: 11-4124 PSG
ORDER

United States District Court
For the Northern District of California

1.      **Standing**

Before the court discusses certification, it first must address whether the Feskes have

standing for each of the claims that they raise.  "Standing is a threshold matter central to [the

court's] subject matter jurisdiction."[57]  To establish standing, the Feskes have the burden to show

three elements: (1) that they "suffered an injury in fact, i.e. one that is sufficiently concrete and

particularized and actual or imminent, not hypothetical or conjectural"; (2) that "the injury is fairly

traceable to the challenged conduct"; and (3) that "the injury is likely to be redressed by a

favorable decision."[58]  The injury required by Article III may exist by virtue of "statutes creating

legal rights, the invasion of which creates standing."[59]  In such cases, the "standing question . . . is

whether the constitutional or standing provision on which the claim rests properly can be

understood as granting persons in the plaintiff's position a right to judicial relief."[60]

The Feskes seek to certify four classes and three subclasses of members of Defendants'

campground organizations:

- Class 1: All California Residents who purchased memberships from, or paid
  membership dues to, Defendants doing business as Thousand Trails between July 21,
  2007 and the present.
    - Sub-Class A:  All members of Class 1 who purchased their memberships by
      telephone, mail, internet, or otherwise not in-person.
    - Sub-Class B:  All members of Class 1 who purchased a membership prior to
      June 2012 and did not inspect at least one of the membership campgrounds prior
      to purchasing a membership.
- Class 2:  All persons who purchased a membership including the right or license to use
  at least one campground located in the State of Texas, from, or paid membership dues
  associated with such a membership to, Defendants doing business as Thousand Trails
  between July 21, 2007 and the present.
    - Sub-Class C: All members of Class 2, excluding persons who purchased their
      membership in the State of Texas.

---

[57] *Id.* at 978.

[58] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

[59] *See Edwards v. First Am. Corp.,* 610 F.3d 514, 517 (9th Cir. 2010) (quoting *Warth v. Seldin,* 422 U.S. 490, 500 (1975)).

[60] *See id.*

Case No.: 11-4124 PSG
ORDER

- Class 3: All Florida residents who purchased memberships from, or paid membership dues to, Defendants doing business as Thousand Trails between July 21, 2007 and the present.
- Class 4:  All persons who purchased a membership including the right or license to use at least one campground located in the State of Nevada, from, or paid membership dues associated with such a membership to, Defendants doing business as Thousand Trails between July 21, 2007 and the present.[61]

### a.    Statutes

According to the Feskes, Class 1 and Sub-Classes A and B are based on violations of California Civil Code Sections 1812.300 et seq, which regulate membership campgrounds in California.[62]  Section 1812.300(b) defines "[m]embership camping contract" as "an agreement offered or sold within the State of California by a membership camping operator or membership camping broker evidencing a purchaser's right or license to use for more than 14 days in a year the campgrounds of a membership camping operator and includes a membership which provides for this use."  Section 1812.300 also defines "purchaser" as "a person who enters into a membership camping contract and thereby obtains the right to use the campgrounds of a membership camping operator."  The "membership camping contract" is the object regulated by the various disclosure requirements following Section 1812.300.[63]  To have standing to claim violations under Sections 1812.300 et seq, the Feskes therefore must have a contract "offered or sold within the State of California."

Class 2 and Sub-Class C purportedly arise from violations of Texas Property Code Section 222, which likewise governs membership campgrounds.[64]  Pursuant to Section 222.002, the "Texas

---

[61] Docket No. 88.

[62] *See id.*

[63] *See, e.g.* Cal. Civ. Code § 1812.302 (providing mandatory disclosures in the membership camping contract); Cal. Civ. Code § 1812.303 (regulating language of the membership camping contract); Cal. Civ. Code § 1812.304 (requiring notice of cancellation rights to purchaser failing to inspect campgrounds in membership camping contract).

[64] *See id.*

14

Case No.: 11-4124 PSG
ORDER

Membership Camping Resort Act" applies "to all membership camping resorts located in this state."  Sections 222.003 to 222.013, which regulate how membership campground operators register with the state[65] and how their contracts should be structured,[66] "also apply to membership camping resorts located outside [Texas] but offered for sale in [Texas]."  The Feskes thus must be able to point either to the sale of a membership contract in Texas or involving an operator within the state to have standing for these claims.

The Feskes base Class 3 on violations of Florida Code Chapter 509, the "Florida Membership Campground Act."[67]  Section 509.502 defines a "membership camping contract" as "an agreement evidencing a purchaser's right to use campgrounds and facilities pursuant to a membership camping plan" and defines a "purchaser" as "a person who purchases a membership camping contract and obtains the right to use the campgrounds and facilities of a membership camping plan."

Class 4 arises from violations of Nevada Administrative Code Chapter 119B.[68]  Chapter 119B.080 defines "membership" as "an agreement offered or sold within [Nevada] evidencing a purchaser's right or license to use, for more than 30 days, a campground or its recreational facilities."  Section 119B.100 defines a "purchaser" as a "present or prospective member."  To have standing to bring a claim pursuant to Chapter 119B.285, which establishes a cause of action under the Nevada's membership campground laws, the Feskes must show that they entered an agreement "offered or sold" within Nevada.

---

[65] *See, e.g.*, Tex. Prop. Code Ch. 222.004.

[66] *See, e.g.*, Tex. Prop. Code Ch. 222.006.

[67] *See* Florida Code § 509.501.

[68] *See id.*

15

Case No.: 11-4124 PSG
ORDER

**United States District Court**
For the Northern District of California

      **b.**      **The Feskes' Allegations**

In their complaint, the Feskes state that they are "individuals residing in California," who in or about 2002, "purchased a membership in the Thousand Trails network of campgrounds" and "agreed to pay annual dues in the amount of $499.00 per year for a minimum of three (3) years."[69] The complaint does not state where the agreement took place.

In a subsequent deposition in June 2012, David Feske indicated that his membership with Defendants first began after he found a notice after his mother had passed away that her membership was past due.[70]  He stated that after finding the paperwork, he "called" and "spoke with a lady and find [sic] out about the membership and stuff."[71]  She sent him forms to fill out, which he returned along with a payment.[72]  From those steps, David Feske assumed he "was getting a membership in Thousand Trails, NACO and this other entity" known as "Leisure Time."[73]  From these statements, and absent any evidence to the contrary, the court logically may infer that the Feskes initiated their relationship with Defendants from California.

Having established that the Feskes claim residency in California and the evidence supports an inference that they began their membership with Defendants in California, the court considers whether they have standing to raise the various claims underlying the classes they seek to certify.

      **c.**      **Standing Determination**

            **i.**      **Nevada and Texas**

As the court explained above, both Nevada and Texas require that for causes of action brought pursuant to their respective campground membership laws, the membership must be

---

[69] Docket No. 1 Ex. B at ¶¶ 1, 9.

[70] *See* Docket No. 75 Ex. I at 21:17 – 22:1.

[71] *Id.* at 22:4-10.

[72] *See id.* at 23:2-9.

[73] *Id.* at 23:12-18.

Case No.: 11-4124 PSG
ORDER

associated with the respective states.  The Feskes do not allege any facts suggesting that they were "offered or sold" a membership in Nevada, nor do they allege any facts that they had a membership in any way associated with Texas.  They therefore have not stated any injury under those particular state statutes because the statutes protect only membership agreements associated with the states, not membership agreements sold in California.  The Feskes thus fail to allege sufficient facts to support the first prong of Article III standing because they are not persons whom the statutes were intended to protect.  The Feskes may not bring claims under either Texas Property Code Chapter 222 or Nevada Administrative Code Chapter 119B.

### ii.    Florida

Florida's campground statute does not explicitly limit the reach of its campground law, but given the due process limitations on the reach of states' laws[74] and David Feske's admission that neither he nor his wife attempted to camp in Florida,[75] the court finds that they do not have standing under Florida Code Chapter 109.

Florida's long-arm statute provides further support that the Feskes have not suffered an injury-in-fact under Chapter 109.  Florida Code Chapter 48.193, the state's long-arm statute, provides that persons subject themselves to the state's jurisdiction "for any cause of action arising from the doing of any of the following acts," which, among others, include "[o]perating, conducting, engaging in, or carrying on a business or business venture in [Florida] or having an office or agency in [Florida]," "[c]ommitting a tortious act within [Florida]," "[b]reaching a contract in [Florida] by failing to perform acts required by the contract to be performed in [Florida]," and "[c]ausing injury to persons or property within [Florida] arising out of an act or

---

[74] *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *see also Goodyear Dunlop Tire Operations, S.A. v. Brown*, 131 S.Ct. 2846, 2848-49 (2011) ("The Fourteenth Amendment's Due Process Clause sets the outer boundaries of a state tribunal's authority to proceed against a defendant.").

[75] *See* Docket No. 75 Ex. I at 21:5-13.

Case No.: 11-4124 PSG
ORDER

omission by the defendant outside [Florida] if, at or about the time of the injury, . . . [t]he defendant was engaged in solicitation or service activities within [Florida]."

From the language of the statute, it is clear that the Florida legislature intended to provide jurisdiction within its courts only for causes of action arising through some connection with Florida. The Feskes' failure to allege any substantial activity by Defendants in Florida or that they were offered or that they purchased an agreement in Florida indicates that they have not been injured in a manner that the Florida law was intended to protect against. Their factual allegations – that Defendants failed to include required disclosures in a camping membership contract tied to California – are not the type of injury that the Florida statute prohibits. The Feskes therefore do not have standing to bring claims under Florida Code Chapter 109.

### iv.    California

Because they are California residents and appear to have entered into their relationship with Defendants in California, the Feskes have cleared the first hurdle to establishing standing under California Civil Code Section 1812.300 et seq. As noted above, a state statute that provides monetary remedies for violations may establish a sufficient injury-in-fact.[76] Here, Section 1812.306(a) provides that "[a] purchaser's remedy for errors in or omissions from the membership camping contract or any of the disclosures or requirements . . . shall be limited to a right of rescission and refund."

The Feskes allege that Defendants failed to comply with Sections 1812.302, 1812.303, and 1812.304, which mandate certain disclosures in membership camping contracts. Those allegations at least state an injury-in-fact in light of the statutory remedies that the campground law provides. The challenged conduct – here, the failure to provide the requisite disclosures – is sufficiently

---

[76] *See Cantrell*, 241 F.3d at 683.

18

Case No.: 11-4124 PSG
ORDER

connected to the injury.  And a favorable decision would allow the Feskes redress through

rescission and refund.  At least on its face, the Feskes' complaint indicates that they have standing.

Defendants assert that even if in the abstract the Feskes have stated a claim, they ultimately

lack standing because they were assignees to the original membership and therefore are not

"purchasers."  As a preliminary matter, the court notes that although it must accept the pleadings as

true in a motion to dismiss, here the court must resolve questions of fact and law beyond the

pleadings because they overlap with class certification requests.[77]  The Feskes must show standing,

like any other issue in a complaint, pursuant to their burden at each stage of the case.[78]  Defendants

have offered as evidence the Feskes' testimony as well as other documents regarding their

membership, the accuracy of which the Feskes have not disputed.[79]  To resolve whether they have

standing, the court determines in part the dispute between the parties regarding the nature of the

Feskes' membership.

Section 1812.300 defines a "purchaser" as "a person who enters into a membership

camping contract and thereby obtains the right to use the campgrounds of a membership camping

operator."  "Membership camping contract" in turn is defined as "an agreement offered or sold . . .

evidencing a purchaser's right or license to use for more than 14 days in a year, the campgrounds

of a membership camping operator and includes a membership which provides for this use."

The Feskes signed a "Membership Transfer Agreement," in which David Feske's mother's

estate transferred to David and Teri Feske her NACO membership.[80]  As part of that agreement,

---

[77] *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 986 (9th Cir. 2011).

[78] *See Lujan*, 504 U.S. at 561 ("Since [standing requirements] are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of litigation.").

[79] *See* Docket No. 75 Exs. A – O.

[80] *See* Docket No. 75 Ex. A.

19

Case No.: 11-4124 PSG
ORDER

the Feskes assented to being subject to the terms of the original membership.[81]  This agreement

suffices to meet the requirement that the Feskes' "entered into" a membership camping contract

when they signed the agreement transferring David Feske's mother's membership into the Feskes'

names.[82]

To summarize, the court finds that the Feskes have not alleged sufficient facts to support

that they suffered an injury-in-fact under Texas, Nevada, or Florida laws governing membership

campgrounds.  The Feskes, however, do meet standing requirements for California's campground

membership law.

## 2.    Class Certification

Having determined that the Feskes may proceed to class certification only on the California

claims, the court considers whether certification is appropriate.

### a.    Legal Standard

Pursuant to Fed. R. Civ. P. 23(c)(1), "[a]t an early practicable time after a person sues or is

sued as a class representative, the court must determine by order whether to certify the action as a

class action."  A defendant may bring a preemptive motion for denial of class certification.[83]

Although the court has "broad discretion to control the class certification process"[84] and to

determine the metes and bounds of discovery, the Ninth Circuit advises that "the propriety of a

class action cannot be determined in some cases without discovery"[85] and so "the better and more

---

[81] *See id.*

[82] *See* Black's Law Dictionary (9th ed. 2009) (defining "enter" in part as "[t]o become a party to").

[83] *See Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 941 (9th Cir. 2009).

[84] *Id.* at 942.

[85] *Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 209 (9th Cir. 1975).

20

Case No.: 11-4124 PSG
ORDER

United States District Court
For the Northern District of California

advisable practice for a District Court to follow is to afford litigants an opportunity to present evidence as to whether a class action was maintainable."[86]

Rule 23(a) requires plaintiffs to show that: (1) "the class is so numerous that joinder of all members is impracticable"; (2) "there are questions of law or fact common to the class"; (3) "the claims or defenses of the representative parties are typical of the claims or defenses of the class"; and (4) "the representative parties will fairly and adequately protect the interests of the class."

If plaintiffs satisfy the threshold Rule 23(a) requirements, they must also show that the putative class satisfies one of the three forms provided in Rule 23(b).  Rule 23(b)(1) permits certification of a class in situations where "prosecuting separate actions by or against individual class members would create a risk of" either "inconsistent or varying adjudications with respect to individual class members" or "would be dispositive of the interests of other members" or "would substantially impair or impede their ability to protect their interests."

Rule 23(b)(2) allows maintenance of a class action where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Rule 23(b)(3) permits certification where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Unlike Rule 23(b)(1) and Rule 23(b)(2) classes, Rule 23(b)(3) actions require notice to members to provide an opportunity to opt out of the class.[87]

---

[86] *Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304 1313 (9th Cir. 1977).

[87] *See* Fed. R. Civ. P. 23(c)(2)(B).

Case No.: 11-4124 PSG
ORDER

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Although the class certification inquiry is not an evaluation of the merits of the case, "a district court must consider the merits if they overlap with the Rule 23(a) requirements."[88]  In other words, the court may only accept as true the pleadings that do not involve the Rule 23(a) analysis; parts of the complaint involving the Rule 23(a) inquiry require further consideration by the court.

**b.    Rule 23(a)**

The court now turns to whether the Feskes have made a sufficient showing under Rule 23(a) to meet the threshold requirements for certifying a class.  Because Defendants primarily challenge the Feskes' adequacy to represent the class and their typicality, the court considers those factors first before looking to numerosity or commonality.

**i.    Typicality and Adequacy of Representatives**

Although technically distinct inquiries, the typicality and adequacy requirements often merge in a class certification analysis because an atypical representative may create conflicts between that representative and the class.[89]  The court thus considers together whether the Feskes are adequate representatives in light of the attack by Defendants that misstatements in their complaint and the demand letter give rise to atypical defenses.

Potential class representatives must satisfy primarily two factors to be adequate representatives: (1) that they will vigorously pursue the class claims on behalf of all members; and (2) that they and their counsel have no conflicts with the other members of the class.[90]  But the court may also look to the honesty and candor of the offered representatives.[91]

---

[88] *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 986 (9th Cir. 2011).

[89] *See, e.g., Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) (noting that when plaintiffs' claims are atypical, they may not be adequate representatives); *see also CE Design Ltd v. King Architectural Metals Inc.*, 637 F.3d 721, 724 (7th Cir. 2011).

[90] *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

[91] *See Harris v. Vector Mktg. Corp.*, 753 F. Supp. 2d 996, 1015 (N.D. Cal. 2010).

22

Case No.: 11-4124 PSG
ORDER

Here, as Defendants point out, several inconsistencies became apparent between the Feskes' complaint and demand letter, and their testimony at their depositions.  In one example, the demand letter states that the Feskes observed numerous non-members when they were camping at the membership campgrounds, which, the letter continues, contrasted with the representations made to the Feskes by Defendants about the exclusivity of the facilities.[92]  A version of those allegations also appears in the complaint, which states that the Feskes relied on representations that the campgrounds were for the exclusive use of members.[93]  But as the Feskes each testified, they do not recall representations by Defendants that the campgrounds could not be used by non-members nor do they remember seeing non-members while they were camping.[94]

The Feskes' allegations regarding their reliance on the promise of a money-back guarantee for their continued membership also appears to have been more strongly asserted in their complaint and demand letter than their memories actually support.  Neither David nor Teri Feske remember actually receiving promises of a money-back guarantee,[95] although Teri Feske asserts that she had a general impression from the Thousand Trails website that a refund was possible.[96]  Defendants point out that the website did not exist when the Feskes entered their membership agreement in 2002.

The sum total of these various inconsistencies, according to Defendants, is an inability by the Feskes to represent any class.[97]  Defendants argue that the contrasting statements provide them

---

[92] *See* Docket No. 75 Ex. B.

[93] *See* Docket No. 1 Ex. B at ¶ 23.

[94] *See* Docket No. 75 Ex. I at 90:22 – 91:3; 149:2 – 151:2; 151:11 – 152:6; Ex. J at 24:1 – 10, 35:21 – 36:18, 37:3 – 11.

[95] *See id.* Ex. I at 66:12 – 25; Ex. J at 20:22 – 21:5.

[96] *See id.* Ex. J at 21:6 – 24.

[97] *See* Docket No. 75.

23

Case No.: 11-4124 PSG
ORDER

with unique defenses to the Feskes' claims, which would distract the Feskes from effectively pursuing the claims for the class.[98]  Defendants also assert that the finger-pointing between the Feskes and their counsel regarding how the inconsistent statements ended up in their complaint and their demand letter reveal internal conflicts that further support denial of certification.[99] Defendants finally argue that the Feskes' inconsistencies reveal a lack of good faith and candor by the Feskes, their counsel, or both.[100]

The court notes that the misstatements in their complaint raise doubts about whether the Feskes or their counsel should represent the interests of other, absent class members.  A class action adjudicates claims for the absent parties who must rely on the named representatives and the class counsel to assert and vigorously pursue their claims.[101]  Depending on the type of class certified, the class action even may prevent the absent members from asserting their individual causes of action.[102]  The class members' due process rights therefore must be protected by evaluation of the adequacy of the representation by the named plaintiffs who make decisions that ultimately determine the success or failure of the claims of the entire class.[103]  Although the court appoints lead counsel for the class only after determining that certification is appropriate,[104]

---

[98] *See id.*

[99] *See id.*

[100] *See id.*

[101] *See Hanlon*, 150 F.3d at 1020 ("To satisfy constitutional due process concerns, absent class members must be afforded adequate representation before entry of a judgment which binds them" and so courts must determine whether "the named plaintiffs and their counsel [will] prosecute the action vigorously on behalf of the class[.]").

[102] *See* Fed. R. Civ. P. 23(c)(2)(A) ("For any class certified under Rule 23(b)(1) or (b)(2), the court may direct appropriate notice to the class."); *Walmart Stores Inc. v. Dukes*, 131 S. Ct. 2541, 2558 (2011) (noting that Rule 23 "provides no opportunity for (b)(1) or (b)(2) class members to opt out and does even oblige the District Court to afford them notice of the action").

[103] *See Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 959 (9th Cir. 2009); *Hanlon*, 150 F.3d at 1020.

24

Case No.: 11-4124 PSG
ORDER

consideration of the performance of counsel is also relevant to the adequacy of representation factor.[105]

"[W]hen attacks on the credibility of the representative party are so sharp as to jeopardize the interests of absent class members" a putative class representative may be considered inadequate because a class "is not fairly and adequately represented if class members have antagonistic or conflicting claims, and a plaintiff with credibility problems may be considered to have interests antagonistic to the class."[106]   But "[c]redibility problems do not automatically render a proposed class representative inadequate,"[107] and "[t]here is inadequacy only where the representative's credibility is questioned on issues directly relevant to the litigation or there are confirmed examples of dishonesty."[108]

The Feskes claim that the inconsistent statements primarily arise from their reliance on representations by Defendants regarding the nature of their membership.  They further assert that any inconsistencies were the result of inadvertent mistakes and more importantly that the class they seek to represent does not turn on reliance by class members and so misstatements regarding their reliance are irrelevant to the claims underlying the class certification.[109]  They also contend that any inconsistencies appeared in unverified papers that were not taken under oath.[110]

---

[104] *See* Fed. R. Civ. P. 23(g) ("Unless a statute provides otherwise, a court that certifies a class must appoint class counsel.").

[105] *See Sweet v. Pfizer*, 232 F.R.D. 360, 370-71 (C.D. Cal. 2005) (evaluating counsel's poor performance as support that adequacy of representation was lacking).

[106] *Id.*

[107] *Harris*, 753 F. Supp. 2d at 1015

[108] *Id.* (internal citations and quotations omitted).

[109] *See* Docket No. 82.

[110] *See id.*

25

Case No.: 11-4124 PSG
ORDER

Although the court is troubled by the numerous inconsistencies in the Feskes' complaint and demand letter, the credibility issues implicate their reliance on Defendants alleged, disputed representations – not whether the contract they received at the time of their "purchase" had the mandatory disclosures.  And so because the inconsistencies in the complaint and the demand letter do not involve the California state law claims for which the Feskes seek to certify the action – specifically Sections 1812.302, 1812.303, and 1812.304 – the court does not on these grounds alone disqualify the Feskes as representatives.[111]

The court finds, however, that the Feskes' claims are atypical for other reasons.  The Feskes argue that they were entitled to annual updates of the information listed in Section 1812.302. Section 1812.302 states:

> A membership camping operator shall provide to a purchaser the following written disclosures in any format which clearly communicates the following reasonably current information before the purchaser signs a membership camping contract, or gives any money or thing of value for the purchase of a membership camping contract. The written disclosures shall be included in or attached to the contract before the time the contract is signed. The following information shall be updated once a year.

According to the Feskes, this provision requires Defendants to provide to its members annual updates of the information listed.  The court disagrees.  Coming at the end of the section describing what must be provided to purchasers "before the purchaser signs a membership camping contract," the requirement that information "shall be updated once a year" relates to how current the information that is attached to the membership contract must be.  Nothing in the section suggests that the operators have an ongoing obligation to provide that information to their members.

The Feskes thus were entitled to the disclosures only at the time of the initial purchase, which here was in 2002.  California Code of Civil Procedure Section 338 provides that the statute of limitations for "[a]n action upon a liability created by statute, other than a penalty or forfeiture"

---

[111] *See Harris*, 753 F. Supp. 2d at 1016 (finding that representative should not be disqualified where questions about credibility did not involve the claims she sought to certify).

Case No.: 11-4124 PSG
ORDER

is three years.  California Code of Civil Procedure Section 340 further provides that the statute of limitations is only one year for "[a]n action upon a statute for a penalty or forfeiture, if the action is given to an individual."  The cause of action that the Feskes point to is Section 1812.306.  The court does not decide under which limitations section Section 1812.306 falls because regardless of the applicable statute, the limitation appears to have run long before the initiation of this action.

"[S]tatute-of-limitations defenses are appropriate for consideration in the class certification calculus."[112]  If the named plaintiffs' statute of limitations defense is typical to other class members, such as in situations where the plaintiffs' claims and class members' claims arise out of the same events,[113] the defense may not be a bar to certification.[114]  But in situations where a plaintiff seeks to represent class members who do not face the same defense, the plaintiff may be atypical and thereby an inadequate representative.[115]

Based on the facts alleged in their complaint and the court's determination of the scope of the disclosure requirements, the Feskes face a potential statute of limitations defense that may require dismissal and render their claims atypical from the class.  Although the court has the discretion to define a narrower sub-class subject to similar statute-of-limitation defenses or to allow the Feskes to find new, adequate class representatives,[116] as the court describes in detail below, the Feskes' proposed classes otherwise do not meet Rule 23(a)'s requirements.  The court therefore will not allow the Feskes to pursue a more narrowly defined class or to find new representatives.

---

[112] *O'Connor v. Boeing N. Am., Inc.*, 197 F.R.D. 404, 411 (C.D. Cal. 2000).

[113] *See, e.g., In re Methyl Tertiary Butyl Ether (MTBE) Products Liability Litigation*, 241 F.R.D. 435, 445-46 (S.D.N.Y. 2007).

[114] *See id.*

[115] *See O'Connor*, 197 F.R.D. at 413.

[116] *See Tait v. BSH Home Appliances Corp.*, --- F.R.D. --- (C.D. Cal. 2012) (allowing plaintiff to attempt to find new class representative because class otherwise met Rule 23(a) requirements).

27

Case No.: 11-4124 PSG
ORDER

ii.     **Commonality**

As the court noted above, it is skeptical that the Feskes can satisfy typicality or adequacy of representation, but the Feskes certainly cannot clear the commonality hurdle.  "To show commonality, [p]laintiffs must demonstrate that there are questions of fact and law that are common to the class."[117]  Although "[t]he requirements of Rule 23(a)(2) have been construed permissively and all questions of fact and law need not be common to satisfy the rule,"[118] the essential inquiry for commonality is "the capacity of a classwide proceeding to generate common answers apt to drive the resolution of litigation."[119]  The question of commonality, like all of the class certification elements, is subject to a "rigorous analysis"[120] and requires the resolution of any disputed questions of fact and law that overlap with the evaluation.[121]

According to the Feskes, the only question at issue is whether Defendants are subject to strict liability under Section 1812.300 et seq.[122]  They oversimplify the questions presented by the statutory framework of the campground laws.  Section 1812.303, for example, dictates that the disclosures provided to the purchasers be in the same language as the oral representations made to the purchasers.[123]  But that requirement mandates individualized questions regarding whether each contract parallels the language used in the accompanying oral representations.  Section 1812.303, at least, does not present a "common contention" that is "capable of classwide resolution – which

---

[117] *Ellis*, 657 F.3d at 981.

[118] *Id.* (internal quotations and citations omitted).

[119] *Dukes*, 131 S.Ct. at 2551; *see also Ellis*, 657 F.3d at 981.

[120] *See Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 161 (1982); *Ellis*, 657 F.3d at 980.

[121] *See Ellis*, 657 F.3d at 986.

[122] *See* Docket No. 88.

[123] *See* Cal. Civil Code § 1812.303(a) ("A membership camping contract shall be written in the same language as that principally used in any oral sales presentation (e.g. Spanish).").

28

Case No.: 11-4124 PSG
ORDER

means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."[124]

Section 1812.304 likewise presents individualized questions that the Feskes have not addressed.  Section 1812.304(a) requires specific language in contracts for purchasers who have not visited a campground prior to signing their contract.  The Feskes contend that the existence or lack thereof of this language is the only question implicated by Section 1812.304, but they disregard 1812.304(b).  That section provides that if the disclosures are provided, purchasers have ten days to get full refunds and operators have at least ten days to return the payments depending on when each purchaser returned the evidence of their membership.  Questions about whether class members properly sought their refunds and whether Defendants properly issued refunds – which in and of itself involves questions about when purchasers returned their evidence of membership, another individualized question – would dominate resolution of whether Defendants violated Section 1812.304.

Even if these issues could be resolved with further class discovery and more sub-classes, the recovery provided by Section 1812.306 involves individualized questions that give rise to problems under both Rule 23(a)(2) and Rule 23(b)(3).[125]  Section 1812.306 provides that the only recovery for violations of the disclosure requirements is rescission and refund.  But not every class member may want rescission or a refund.  Determining which class members want rescission and which class members are entitled to rescission if they already have terminated their contracts are

---

[124] *Dukes*, 131 S. Ct. at 2551.

[125] *See* Fed. R. Civ. P. 23(b)(3) (providing that certification is appropriate only where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members").

Case No.: 11-4124 PSG
ORDER

United States District Court
For the Northern District of California

questions that must be dealt with on a class-member-by-class member basis.[126]  Merely resolving

the question of whether the required disclosures were included would not resolve the litigation.

Even if the rescission and remedy questions did not preclude a finding of commonality at

the Rule 23(a) stage, the necessity of those inquiries reveal that common questions do not

"predominate" as required for certification under Rule 23(b)(3),[127] and the only class that the court

could certify would have to be pursuant to Rule 23(b)(3).  The Feskes claim that because they seek

injunctive relief they may certify under Rule 23(b)(2),[128] which does not require that common

questions "predominate."  But injunctive relief is unavailable under Section 1812.306, and so Rule

23(b)(2) likewise is unavailable.  Rule 23(b)(3) is the only option for the Feskes to certify a class,

and the numerous individual questions that arise under Section 1812.300 and the sections that

follow preclude a finding that common questions "predominate."

On these grounds and in light of the court's skepticism over the ability of the Feskes to meet

other requirements for certification, the request to certify is DENIED.

## C.    Outstanding Discovery Motions

During the class certification discovery period, the parties brought several motions

regarding discovery for the class.[129]  Most of these motions involve disputes between the parties

about the size of a sample group of potential class members to be produced to the Feskes pursuant

to this court's April 3 order.[130]  The parties apparently could not decide the proper number of

---

[126] *Cf. Amparan v. Plaza Home Mortg., Inc.*, 678 F. Supp. 2d 961, 979 (N.D. Cal. 2008) (noting that in the Truth In Lending Act context, the highly individualized nature of the remedy of rescission makes class-wide certification inappropriate).

[127] *Cf. Amparan*, 678 F. Supp. 2d at 979.

[128] *See* Docket No. 88.

[129] *See* Docket Nos. 52, 54, 55, 56, 64.

[130] *See* Docket No. 51.

Case No.: 11-4124 PSG
ORDER

potential class members that should be included to be statistically significant.[131]   Because the court

has determined that certification of a class is improper, discovery to aid in certification is

unnecessary.   Production of a sample of the potential class members therefore is no longer

necessary and so the motions involving sample size are DENIED as moot.

The Feskes' May 22, 2012 motion to compel, on the other hand, requires further

consideration.   Several of the Feskes' requests for production involve discovery for class

certification or for claims for which they have no standing, such as requests for information about

the membership campground laws in Texas, Arizona, Florida, and Nevada or representative

samples of contracts provided to potential class members.[132]   Because the court has denied class

certification, these requests are not relevant to the Feskes' claims.   Their requests regarding this

information therefore are DENIED.

Although the Feskes may not represent a class, they still have outstanding claims involving

Sections 17200 and 17500, fraud, and negligent misrepresentation.[133]   Requests involving drafting

of contract language, representations on Defendants' websites, documents regarding the

availability of the campgrounds to nonmembers, and documents involving marketing and

advertisement of the campgrounds fall within the broad definition of relevance under Fed. R. Civ.

P. 26(b).[134]

Defendants assert in their opposition to the motion to compel that they had produced most

of the documents the Feskes requested,[135] and it is unclear from the Feskes' reply to what extent

---

[131] *See* Docket Nos. 52, 54, 55, 56.

[132] *See* Docket No. 64 Ex. 1.

[133] *See* Docket No. 1 Ex. B.

[134] *See Gonzales v. Google Inc.*, 234 F.R.D. 674, 680 (N.D. Cal. 2006) (internal citations and quotations omitted).

[135] *See* Docket No. 66.

31

Case No.: 11-4124 PSG
ORDER

Defendants have produced documents responsive to the requests the court has identified as relevant to the Feskes' claims.[136]  Because the court does not have sufficient information to determine whether Defendants have failed to comply with their discovery obligations regarding non-class requests, the court DENIES WITHOUT PREJUDICE the Feskes' motion.  If the Feskes contend that Defendants have not produced sufficient discovery on their non-class requests, they may submit – on shortened time – another motion to compel explaining the deficiencies.

**IT IS SO ORDERED.**

Dated:  March 18, 2013

PAUL S. GREWAL
United States Magistrate Judge

---

[136] *See* Docket No. 70.

32

Case No.: 11-4124 PSG
ORDER